KENNINGTON-SAENGER THEATRES, INC., *v.* STATE *ex rel.* DIST. ATTY.

(In Banc.   June 12, 1944.   Suggestion of Error Overruled, September 25, 1944.)

[18 So. (2d) 483.   No. 35366.]

844

Green & Green, Watkins & Avery, all of Jackson, Heidelberg & Roberts, of Hattiesburg, and Rosen, Kammer, Wolfe, Hopkins & Burke, of New Orleans, La., for appellant, on motion to reverse and dismiss.

**Watkins & Eager** and **W. C. Wells,** all of Jackson, for appellee, on motion to reverse and dismiss.

848

**Green & Green, Watkins & Avery,** all of Jackson, **Heidelberg & Roberts,** of Hattiesburg, and **Rosen, Kammer, Wolfe, Hopkins & Burke,** of New Orleans, La., for appellant.

850

851

852

854

855

856

858

860

Watkins & Eager and W. C. Wells, all of Jackson, for appellee.

Argued orally by **Rowland W. Heidelberg** and **Garner W. Green**, for appellant, and by **W. H. Watkins**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The state, on relation of the District Attorney for the Seventh Judicial District of Mississippi, on September 16, 1942, gave the circuit court of the First Judicial District of Hinds County to understand and be informed by a proceeding in the nature of quo warranto that a judgment of forfeiture and ouster should be rendered against the appellant, Kennington-Saenger Theatres, Inc., a Delaware corporation, and that its right to exercise any of the franchises granted to it should be forfeited, because that, on each Sunday prior thereto, beginning with the 12th day of April, 1942, the said corporation had "in open defiance of law engaged in, shown forth, enacted

and exhibited . . . interludes, farces, and plays, and other like shows, by exhibiting moving pictures thereof, . . ., for an admission price, . . . in express violation of Section 1133 of the Mississippi Code of 1930, Section 2370, 2 Mississippi Code 1942, . . . as interpreted by the Supreme Court of Mississippi, . . .; and has persistently refused to comply with the laws of the State . . ." Wherefore, the petitioner prayed judgment of forfeiture and ouster against the said corporation, and that its right to do business throughout the state be forfeited. After a hearing the jury rendered a verdict accordingly, but the court entered a judgment thereon to the effect that "the right and franchise of the Kennington-Saenger Theatres, Inc., defendant, to operate theatres and moving picture shows in the City of Jackson, Mississippi, upon the Sabbath Day be and is hereby cancelled and set to naught." From this judgment the appellant, Kennington-Saenger Theatres, Inc., prosecuted this appeal and the appellee has taken a cross-appeal, it being the contention of the appellee that if the judgment as rendered by the trial court was unauthorized under Chapter 59, Code of 1930, (Title 9, Chapter 2, Code of 1942), this court should on appeal enter such judgment as the trial court should have entered, that is to say, a judgment of forfeiture and ouster whereby the right and franchise of the said corporation to do business throughout the state would be forfeited.

We are of the opinion that the judgment as rendered was unauthorized for the reason that any action which seeks by quo warranto to forfeit the right and franchise of a corporation to do business throughout the state is one on behalf of the general public of the entire state and could be brought only by the Attorney-General, as the chosen representative of the whole people. Nor did the limited character of the judgment eliminate the question of the court's want of jurisdiction to grant relief, since our Code chapter on quo warranto undertakes to cover the entire subject matter of forfeiture and ouster as to

corporations doing business in this state and provides for the rendition of no such judgment as that here appealed from; and, moreover, the verdict of the jury, returned pursuant to a peremptory instruction for the state under the pleading and proof, did not warrant the entry of a judgment otherwise than in conformity therewith. It is not within the province of a trial court to limit the scope of its judgment in a quo warranto proceeding on account of the fact that the state has purported to appear through one legal representative rather than another. Then, too, a prayer for general relief pursuant to which a court of equity may grant such relief as to it may seem meet and proper, is unknown in a court of law and judgments rendered therein should substantially conform to the allegations of the pleading, the recovery sought, and the proof.

It was the duty of the trial court to determine in the outset the legal capacity of the district attorney to appear for the state in seeking a state-wide forfeiture of the corporate rights and franchises of the appellant to do business anywhere within its domain. That this question should have been determined from the face of the proceeding itself cannot be successfully challenged. Capitol Stages, Inc., et al. v. State ex rel. Hewitt, District Attorney, 157 Miss. 576, 128 So. 759. Unless this officer had such authority, then the trial court was without jurisdiction to render any judgment that would be binding either on the state or the defendant, except a judgment of dismissal without prejudice to the right of the state to sue by its proper officer—the Attorney-General. It was so held on the question of the court's jurisdiction in the recent cases of State ex rel. v. Stewart, 184 Miss. 202, 184 So. 44, 46, 185 So. 247, and City of Natchez v. Craig, State Tax Com'r, 191 Miss. 567, 3 So. (2d) 837, 838, and in which former case the court said: "The State could not be bound by an appearance in court on its behalf by an unauthorized official to any greater extent than an individual could be bound by the act of a person assum-

ing to sue on his behalf without authority." And, in the case of Drummond v. State, 184 Miss. 738, 185 So. 207, 209, the court announced the rule to be that: "The Supreme Court in all cases is bound to inquire into its own jurisdiction, and decline to exercise a power not conferred upon it by law. And, if the question of jurisdiction is not raised by either of the parties to the cause, it is the duty of the Supreme Court to raise it of its own motion." Therefore, it is immaterial whether the defendant specifically challenged by demurrer the legal capacity of the district attorney to bring this proceeding for state-wide relief, since his right to do so goes to the very power and jurisdiction of the court to act at all in the premises.

As aptly stated in the case of Commonwealth, etc., v. American Baseball Club of Philadelphia, 290 Pa. 136, 138 A. 497, 500, 53 A. L. R. 1027, in regard to whether quo warranto was the proper remedy, "it is important at its threshold to consider who brought the proceeding. It was initiated by the Attorney-General, the chief law officer of the commonwealth, and necessarily has behind it the approval of the state's highest executive officer, the Governor. The people's mandate to him in their fundamental law (Constitution, art. 4, Section 2 [P. S. Pa.]) is: 'The supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed.'" Likewise, Section 116, Constitution of Mississippi 1890, provides that: "The chief executive power of this state shall be vested in a governor . . ." Section 123 of said Constitution provides that: "The governor shall see that the laws are faithfully executed." To that end Section 173 of this Constitution provides that: "There shall be an attorney general elected at the same time and in the same manner as the governor is elected . . ." The duties of the Attorney-General were not prescribed by the Constitution, nor did it provide that they would necessarily have to be prescribed by the legislature. They existed at common law, as held in State v. Key, 93 Miss. 115, 46 So. 75; Capitol Stages, Inc.,

v. State ex rel., etc., supra. The creation of the office of Attorney-General by the Constitution vested him with these common law duties, which he had previously exercised as chief law officer of the realm. And, in the case of Capitol Stages, Inc., v. State ex rel. Hewitt, District Attorney, supra [157 Miss. 576, 128 So. 764], this court said: "As to all litigation, the subject-matter of which is of state-wide interest, the Attorney-General alone has the right to represent the state." The question is therefore presented in the case at bar as to what is the "subject matter" of the present suit. It is not whether the defendant has violated the criminal laws within the Seventh Judicial District of Mississippi, but whether, because of such alleged violation, its right to do business throughout the state should be cancelled in accordance with the allegations and prayer of this quo warranto proceeding, and in compliance with the verdict of the jury in that behalf.

In the Capitol Stages, Inc., case, supra, the court further said that at common law the Attorney-General was " 'the chief legal adviser of the crown, and was entrusted with the management of all legal affairs, and the prosecution of all suits, civil or criminal, in which the crown was interested' . . .; he had the power to control and manage all litigation on behalf of the state; . . ., and maintain all suits necessary for the enforcement of the laws of the state, the preservation of order, and protection of the public rights." The court then took cognizance of the fact that the office of district attorney, which did not exist at common law, had been created by Section 174 of the same Constitution, which provided that his duties should be prescribed by the legislature. Then, notwithstanding that the legislature had by Section 1661, Code of 1906 (now Section 4363, Code of 1930, Section 3920, 3 Code of 1942), made it the duty of the District Attorney to appear in the circuit courts and prosecute all civil cases in which the state or any county in his district may be interested, and to in-

stitute and prosecute to final judgment any case in the name of the state against any person or corporation "for any violation of the constitution or the laws of this state, in order to enforce any penalties, fines or forfeitures imposed by law in any court of his district having jurisdiction, with like effect as if the suit was instituted by the attorney-general," and had likewise by the enactment of Chapter 238, Laws of 1918, given the district attorneys, along with the Attorney-General, authority to institute and defend suits arising out of any act or order of the Tax Commission or Railroad Commission, affecting the laws and revenues of the state, the court expressly declared in the Capitol Stages, Inc., case, notwithstanding that there was no ambiguity in the language of the two statutes last above mentioned, that: "It is inconceivable that the Legislature intended by these statutes to confer as large powers upon the district attorneys as are possessed by the Attorney-General. Such a construction could, and probably would, in some cases lead to such a conflict of authority between the two officers as would result in the destruction, instead of promotion, of the public interest." In that case it was held that a district attorney has no authority to represent the state in any litigation in their districts where the subject matter of such litigation is of state-wide interest as distinguished from local interest,—save as to some express statutory exceptions not here involved. That decision announced nothing new, but if it had, it has stood now for fourteen years, and instead of being qualified in any way has been reaffirmed. For instance, in White v. Lowry, 162 Miss. 751, 759, 139 So. 874, 876, it was said: "There is involved, as the basis or chief item of the suit, an important legal question; and it is more in harmony with our governmental system that the Attorney-General, who is the responsible head of the legal department of the state, shall have initial jurisdiction over those important legal questions which affect the general interests or policy of the state." See also State, etc., v. Stewart, 184 Miss. 202, 184

So. 44, 46, 185 So. 247, wherein it was said that "the attorney general is vested with both statutory and common law authority to represent the sovereign in the enforcement of its laws and protection of public rights."

This being the established rule as to legal questions which affect the general interests and policy of the state, and as to who shall institute litigation on behalf' of the state, when such questions are involved, and from which we ought not to depart in order to meet some special demand, or some special situation, yet we are confronted here with the contention that the statute, Section 3054, Code of 1930, Sec. 1121, Code 1942, expressly allows proceedings in quo warranto to be brought by the Attorney-General or a district attorney,—to which we reply with that line of decisions going further back than Capitol Stages, Inc., v. State which hold to the "dominant consideration that in concrete instances there must be given to procedural statutes that construction, if possible, which will preserve the essentials of "harmony and consistency in our judicial system.' " Federal Credit Co. v. Zepernick Grocery Co., 153 Miss. 489, 492, 120 So. 173, 174. Also, Choctaw County v. Tennison, 161 Miss. 66, 74, 134 So. 900; Caperton v. Winston County Fair Ass'n, 169 Miss. 503, 508, 153 So. 801; Great A. & P. Tea Co.'v. Davis, 177 Miss. 562, 570, 171 So. 550; Simpson County v. Burkett, 178 Miss. 44, 55, 172 So. 329.

Proceeding then to give the statute here under consideration the construction required by the cases next above cited, we must have the result that in cases of quo warranto to forfeit corporate charters or corporate rights, the Attorney-General, and he only, has the right to institute such a suit when the relief prayed is to forfeit that right throughout the state, and that the district attorney is allowed to do so only when the corporation is authorized by its charter .to exercise its functions only in a certain county or judicial district of this state or where its charter powers are such that because of the essential manner of the exercise thereof, or because of ex-

clusive physical conditions or situations, or the like, those powers cannot be exercised except in a certain territorial location in the state, so that its ouster in that territory could not be of any real interest to other sections of the state.

Here, however, the charter authorization is state-wide, and there are no exclusive physical or like conditions which confine the exercise of those powers to a restricted area within the state. It is true that, so far as this record discloses, the exercise of the corporate powers happens to be confined at present to the City of Jackson in Hinds County, but there is nothing in the nature of the business or otherwise which would confine its operation to such limited area. It may as well be pursued in any county, and for all we know such may be its future plan and program. From which it follows that the judgment here sought would constitute a restraint upon its right to operate at all on any day of the week either in the City of Jackson, or at any other place in the state, wherefore the subject matter of the litigation is state-wide, and not local.

Under the letter of the statute involved in the case of White v. Lowry, supra, it was contended that the State Auditor, who brought the suit, had the authority to do so, but such right was by the court denied since it is a fundamental rule of statutory construction of universal application that the controlling purpose is to ascertain and give effect to the intent and purpose of the legislature. And the same logic and reasoning adopted by the court in the Capitol Stages, Inc. and the White v. Lowry cases, supra, applies with equal force to the provision of Section 3054, Code of 1930, Section 1121, 1 Code 1942, wherein it provides that the information in the nature of quo warranto shall be ''in the name of the state, and by the attorney-general or a district attorney.''

Manifestly, it was never the intention of the framers of the Constitution in adopting Section 174 thereof, creating the office of district attorney and authorizing the

legislature to prescribe his duties, that such powers should be conferred by the legislature upon this officer as would enable him to usurp the common-law duties and functions of the Attorney-General provided for under Section 173 of that Constitution. The office of district attorney was created under Section 174 for each circuit court district, and not for the entire state. When it was provided that his duties should be prescribed by the legislature, it was intended that they would be such duties as were to be performed only within his territorial jurisdiction in connection with matters local to such jurisdiction, as distinguished from matters of state-wide public interest. Such a construction would avoid any conflict between said Sections 173 and 174 of the Constitution, and would render Section 3054, Code of 1930, Section 1121, 1 Code 1942, free of constitutional objections. It was said in Russell Inv. Corp. v. Russell, 182 Miss. 385, 178 So. 815, 182 So. 102, 107, in regard to the construction of statutes that: ''They (the courts) should adopt a construction that will bring it into harmony with the constitution by restricting its application to the legitimate field of legislation, whenever necessary . . . to uphold its constitutionality and carry its provisions into effect. Money v. Wood, 152 Miss. 17, 118 So. 357; Mai v. State, 152 Miss. 225, 119 So. 177; Smith v. Chickasaw County, 156 Miss. 171, 125 So. 96, 705; Miller v. Sherrard, 157 Miss. 124, 126 So. 903; Chassanoil v. City of Greenwood, 166 Miss. 848, 148 So. 781; Id., 291 U. S. 584, 54 S. Ct. 541, 78 L. Ed. 1004; Tucker Printing Co. v. Board of Supervisors of Attala County, 171 Miss. 608, 158 So. 336.''

The district attorney in the Capitol Stages case sought by an injunction to restrain the defendant from doing alleged irreparable injury to Highway 51, where it ran through the counties of Pike, Lincoln and Copiah in his district. The court said that: ''There is no charge in the bill that appellants (Capitol Stages, Inc.) were violating their franchise, or violating the laws of the State in the use of the highway, and, if there were such a charge, un-

der the principles above laid down, it would be a matter of state-wide public interest, and not local, and any litigation in reference thereto on behalf of the state would rest with the Attorney-General alone.'' And, in denying the right of the District Attorney to bring such a suit, the court further said: ''The Attorney General would have in view, not purely local interests, but the paramount state-wide public interests.'' In that case, the district attorney complained only of what was being done in his district, as is true in the case now before us, but in that case the whole state was interested in highway 51, the same as the whole state is interested in whether or not the rights and franchises of corporations, whether domestic or foreign, to do business throughout the state should be cancelled. For instance, suppose that a district attorney should undertake by quo warranto to forfeit the right and franchise of the Illinois Central Railroad Company to do business in the state because of an alleged or admitted violation of some criminal statute in his district, or for like reason should seek to forfeit the right of the oil companies, now engaged in the exploration and development of the mineral resources of the state, to do any further business herein, or should undertake by quo warranto to oust a governor from office on the ground that the very letter of the statute grants such right to either the ''Attorney-General or a district attorney.'' Could it then be contended that the question of whether such relief should be granted would not be a matter of interest to the people of the state as a whole even though the offense complained of had been committed within the territorial jurisdiction of a particular district attorney? These examples serve at least to illustrate the obvious necessity and importance of preserving the line of demarcation, already declared by the court to exist in this state, between the power and authority of these two respective officers, leaving it to the district attorney to proceed by quo warranto in proper cases against corporations whose right to do business is limited by the charter powers

to a local territory within his district, and to proceed by quo warranto in proper cases against county and district officers, but at the same time reserving to the Attorney-General, the chosen representative of the people of the entire state, the power, authority and discretion, as the state's chief legal adviser, to determine if and when it is to the best interest of the state that such a proceeding shall be instituted against any corporation to forfeit its state-wide right to do business herein, and as to whether there should be an ouster of any state officer elected by all the people, and whose removal from and continuance in office is a matter of state-wide public concern.

It should be remembered that the sovereign state is the supposed litigant in this case; that the right to forfeit the state-wide franchise of a corporation to do business, if such right exists, may be waived; and that the responsibility of determining whether such right of forfeiture shall be waived or insisted upon must be centralized in some official who is answerable to the whole people who are to be affected thereby, if we are to avoid conflict and confusion. Imagine the intolerable situation that would prevail if a foreign corporation should be engaged in business in each of the seventeen judicial districts and several of the district attorneys should file suits against it to oust it from the entire state, because of alleged violations of the criminal law in their respective jurisdictions, and that the remainder of such seventeen district attorneys, with equal right and authority, should be opposed to the cancellation of its right to do business in the state, and especially insofar as their own districts were concerned, even though such corporation had violated the law therein, then whose desire should prevail? Or, to state it differently, who is to give or withhold the state's consent to the forfeiture of state-wide corporate franchises, which the state in its sovereign capacity may either waive or insist upon, if not its duly authorized legal representative—the Attorney-General?

It is true that Section 4366, Code of 1930, Section 3923, Code of 1942, makes it the duty of a District Attorney to institute and prosecute to effect, before the proper court, "all persons indebted to the state;" that Section 4369, Code of 1930, Section 3926, Code of 1942, makes it the duty of such officer to institute and prosecute suits "when . . . necessary and proper for the enforcement or collection of any judgment or debt in favor of the state;" and that Section 4370, Code of 1930, Section 3927, Code of 1942, authorizes him to institute and prosecute "any civil suit for a violation of the anti-trust statutes of this state"—all of which suits may be said to involve matters of state-wide interest. However, it should be noted that these are the only sections in the chapter on "District Attorneys" granting such authority and that the first two of these statutes condition his right to appear for the whole state upon the "approval of the attorney-general," while the latter statute prohibits the filing of an anti-trust suit by a district attorney "without the consent in writing of the attorney-general." Then, most assuredly, in view of this declared public policy of reserving unto the Attorney-General the final right to speak for the state in such matters of state-wide interest, it was never intended that a district attorney whose desire is primarily to serve a local constituency, however laudable it may be, should be permitted in the exercise of his own discretion to appear and bind the entire state in the matter of ousting corporations therefrom by quo-warranto or in cancelling their rights and franchises to do business anywhere within its borders; and especially so where the trial court in which such a proceeding is instituted is left no discretion as to whether or not such penalty shall be enforced when the statutory ground of complaint is sustained by the proof, even though the trial judge may be of the opinion that the best interest of the state does not require such action.

Here the relief sought would preclude the appellant from operating picture shows at all on any day of the

week, including Sunday, either in the Seventh Judicial District or at any other place in the state, while other like corporations are now permitted to operate in many cities and towns other than Jackson on Sundays and at all other times. Thus, when it is remembered that the state, and not the district attorney, is the real litigant, there would arise the constitutional question, about which we express no opinion one way or the other, as to whether or not such action by the state against one such corporation in particular would violate that provision of the Fourteenth Amendment to the Constitution of the United States which declares that no state shall "deny to any person within its jurisdiction the equal protection of the laws." We make this observation merely to further emphasize the importance of preserving the right of the Attorney-General alone to represent the state in such matters of state-wide interest in order that the state may deal fairly and impartially with those corporations, whether domestic or foreign, engaged in the same kind and character of business in determining whether or not the state shall waive or insist upon its authority to forfeit the right of either of them to do business here.

What we are saying in this opinion is not intended as a decision of any question that may arise involving a conflict of asserted authority between any other state officer and the Attorney-General to represent the state in litigation pertaining to the discharge of the functions of his state-wide office, since such a question is not here involved. We confine the decision here to the relative powers of the Attorney-General and a district officer in matters of state-wide public interest, based primarily upon the authority of what was said and held as a precedent in the Capitol Stages, Inc., case, heretofore cited and quoted from.

Since the state has not invoked the aid of the court through its duly authorized legal representative, we are without jurisdiction to pass upon the other questions in-

volved on this appeal, and hence we express no opinion in regard thereto. The cause will be reversed and the suit dismissed, without prejudice to whatever rights the state may have in the premises. And it is so ordered.

Reversed, and suit dismissed.

### Dissenting Opinion.

**Smith, C. J.**, delivered a dissenting opinion.

Section 1121, Miss. Code 1942, plainly and unambiguously provides that quo warranto proceedings ''shall be by information, in the name of the state, by the attorney-general or a district attorney, on his own motion or on relation of another;'' and as the authority here given district attorneys to institute such proceedings is not qualified expressly, or by necessary implication, by any other statute, this court has no right to deprive them of it. Section 1121, being plain and unambiguous, is not open to construction and should be obeyed as written, for ''no principle is more firmly established, or rests on more secure foundations, than the rule which declares when a law is plain and unambiguous, whether it be expressed in general or limited terms, that the legislature shall be intended to mean what they have plainly expressed, and, consequently, no room is left for construction.'' Koch & Dryfus v. Bridges, 45 Miss. 247, at page 259. This rule has been repeatedly re-announced by this court, the latest case so doing being Wilson v. Yazoo & M. V. R. Co., 192 Miss. 424, 6 So. (2d) 313.

Notwithstanding the absence of a qualifying statute and in violation of this rule the court has construed this section to vest the authority to institute quo warranto proceedings against a corporation to forfeit its charter or exclude it from doing business in this state exclusively in the attorney-general, and to vest district attorneys with the authority only to institute such proceedings ''when the corporation is authorized by its charter to exercise

its functions only in a certain county or judicial district of this State or where its charter powers are such that because of the essential manner of the exercises thereof, or because of exclusive physical conditions or situations, or the like, those powers cannot be exercised except in a certain territorial location in the State, so that its ouster in that territory could not be of any real interest to other sections of the State.''

As I understand the controlling opinion it rests on three basic theses or propositions, at least one of which must be established in order to justify the construction now given to Section 1121, Miss. Code 1942; these propositions are, (1) the State's Constitution by creating the office of Attorney-General ex vi termini invested its incumbent with all of the power and authority exercised by the English Attorney-General under the common law, among which was to represent the King in the courts in litigation in which he was a party; the state now occupying the position of the King. (2) The Attorney-General being a state officer and the district attorney a state district officer, the Constitution intends for the Attorney-General to represent the state in the courts in litigation to which it is a party that is of state-wide interest, and for a district attorney to represent it in litigation which affects his district only. And (3) it is more in keeping with the office of each for the Attorney-General to represent the state matters of state-wide interest and for a district attorney to represent it in litigation which affects his district only, and consequently the legislature must have so intended.

Several fallacies lurk in the first two of these theses, and the third presents a complete non sequitur.

It is true that our ancestors brought with them to this country the then substantive common law of England insofar as it was applicable to conditions here, but they did not bring with them the English governmental set-up in any of its branches, and when the states' constitutions were formed after the separation of the colonies from

England, each state's official and administrative set-up was determined for itself and was set forth either in its Constitution or statutes. The powers and duties of its officers were such only as were given to them by Constitution or statute, either expressly or by necessary implication. While this court has decided that question both ways so that it is now still open with us, I do not think any good reason can be given that would justify a holding contrary to what I have indicated. Had the original framers of our Constitutions thought otherwise, I am sure they would not have given the name of any English office to any of those created by the Constitutions they were adopting or the statutes they were enacting. But that aside, two among other fallacies lurk in the first of these theses of the controlling opinion, (1) error as to the source from which the English Attorney-General derived his power and authority, and (2) the assumption that the common law insofar as it applies to the powers and duties of the Attorney-General can not be repealed or modified by the legislature.

The power and duties of the English Attorney-General, though frequently referred to as common-law powers and duties, were not in fact such. He was the King's legal adviser and represented him in the courts, and was when the common law came to this country appointed not under any common-law rule but by letters-patent of the King, which set forth what his powers and duties should be, including the courts in which he could appear as the King's representative, and he was at all times subject to the King's supervision and control. 6 Holdsworth's History of the Common Law, 458 et seq. It is true that the common law recognized his right to represent the King in the courts to the extent authorized by his letters-patent, but did not confer or broaden this right.

Section 103 of the State Constitution provides that: "The legislature shall provide suitable compensation for all officers, and shall define their respective powers." This section requires the legislature to do for the At-

torney-General of the state what his letters-patent did for the English Attorney-General, i. e., set forth his powers and duties. It has been so understood and acted on by the legislature since it appeared in the Constitution of 1832; and since that time two Constitutions containing the section have been adopted, so that it would seem that the right of the legislature to prescribe the powers and duties of the Attorney-General has long since been set at rest by the people themselves acting through their constitutional conventions.

But it is said that the Attorney-General being the chief law officer of the state has the sole right under Section 173 of the Constitution to represent the state in matters of state-wide interest—a rather novel doctrine when viewed in the light of the legislative history of that office, from which it will appear that the legislature has never so interpreted that section of the Constitution and has, without challenge since Mississippi became a state, conferred on other officers the right to represent the state in matters of state-wide interest, e.g., prosecutions for the commission of crime and the collection of past due and unpaid state taxes. To hold that the Attorney-General can alone be given the right to represent the state in matters of state-wide interest would nullify many of our statutes, particularly those giving the State Tax Collector the right to sue for unpaid taxes due the state, and a large part of Section 3920, Miss. Code 1942, conferring authority on district attorneys to represent the state in certain matters that are of state-wide interest.

Section 1121, Miss. Code 1942, first appeared, in part, in our statutes in July, 1843, by an act which appears in Hutchinson's Miss. Code as Section 1 of Article 22 of Chapter 15 thereof, at p. 329. By that statute, authority to proceed by quo warranto against banks for violation of its charter and persons unlawfully exercising the franchise of being a banking corporation was conferred on district attorneys alone. By Article 12, Section 4, of Chapter 35, Rev. Code of 1857, this authority of district at-

torneys was broadened so as to authorize them to proceed by quo warranto against all private corporations. By Section 1491, Rev. Code of 1871, this authority was conferred for the first time on the Attorney-General, the second providing that quo warranto proceedings may be begun "by the Attorney-General or district attorney of the proper district." By Section 2585, Rev. Code of 1880, this authority was again conferred on district attorneys only. By Section 3521, Ann. Code of 1892, and Section 4018, Code of 1906, this authority was conferred on the Attorney-General "or a district attorney."

But even if under Section 173 of the Constitution we may look to the common law for powers of the Attorney-General not expressly conferred by statute, that law is not sacrosanct but is subject to repeal or modification by the legislature. That the legislature has this power is so universally acted on by it and recognized by the courts that I shall not pause to further discuss it.

The fact that the Attorney-General is.a state officer and the district attorney is a district officer might well have been, and probably was taken into consideration by the legislature in enacting Section 1121, Miss. Code 1942, and its predecessors, but what power and authority should be given to each was wholly for the legislature's determination and should not enter into the court's interpretation of Section 1121 of the Code, for the reason that that section is plain and unambiguous. Much has been said, and more intimated, as to the lack of wisdom in permitting district attorneys to represent the state in litigation of state-wide interest, particularly in quo warranto proceedings. If such lack of wisdom there here be the court has no concern therewith, for its duty is to enforce a valid law whether in its judgment it is a wise one or not. But I do not think that criticism can here be brought against the legislature; for aught I or my associates know, it may have thought, as I do, that it would be unwise to vest one man only with the right to determine whether a quo warranto proceeding should be instituted against

a law-breaking corporation. It may have thought, for aught I know, that cases might arise in which a corporation was so flagrantly violating the laws of the state, as the petition here charges that this appellant is, that if a domestic corporation, its charter, and if a foreign corporation, its right to do business in this state, should be revoked; and if one man only were authorized to proceed against it, he might mistakenly think that no such proceeding should be instituted, when another having the same authority might correctly think otherwise and proceed against the corporation as the statute contemplates.

As here amended by construction, the statute permits district attorneys to institute quo warranto proceedings against corporations under circumstances which do not arise. Domestic corporations are not chartered, and foreign corporations are not admitted into the state, to do business only in particular localities thereof, and the fact that a corporation confines its business to a particular locality voluntarily, or because of physical conditions, is of no consequence. The state, as a whole, is interested in the observance of its law by corporations which it creates or admits to do business within its borders.

The only difference in this connection between the authority conferred by section 1121, Miss. Code 1942, on the Attorney-General and on district attorneys, is that the Attorney-General may institute a quo warranto proceeding against a corporation in any county of the state in which jurisdiction of it can be obtained, while the district attorneys, under section 3920, Miss. Code 1942, are confined to counties within their districts in which jurisdiction of a corporation can be obtained.

The cases cited in the controlling opinion do not deal with section 1121 of the Code, and, as that section is not ambiguous, are not in point here, except insofar as they may be thought to bear on the constitutional validity of that section; and the phrase "state-wide interest" does not appear in our Constitution or statutes, but is a catchy and convenient phrase coined by this court and inter-

polated without warrant therefor into the statutes governing the powers and authority of the Attorney-General and district attorneys.

I also dissent from the holding that in a quo warranto proceeding for the exclusion of a foreign corporation from doing business in this state, where the jury has found the corporation guilty of the unlawful acts charged against it, that the court is without power to render any judgment thereon except one excluding the corporation from doing business in this state. Whether the judgment should be one of exclusion, or of a more limited character, rests in the sound judicial discretion of the trial judge. Whether or not that discretion was here abused, as to which I express no opinion, its abuse would not warrant the dismissal of the case, but only the correction of the judgment rendered.

**Alexander, J.,** delivered a dissenting opinion.

I concur in the views expressed by the Chief Justice. We are not dealing with an ambiguous statute. Its language is clear, it covers the situation here presented and is consistent with a practical procedure. Its stark language can be evaded only by an attack which assaults its provisions by one or both of the following maneuvers; (1) The legislature did not intend that its language be taken literally, or (2) it had no authority to say what it said.

As to the first device, any possible doubt is removed by its studied attempt to illustrate its purpose by gratuitous-setting forth in Section 1123, Code 1942, the form in which the information may be filed. It is there stated that "For convenience and certainty the information, if against a corporation, shall set out briefly the causes of forfeiture." The prescribed form begins as follows: " 'State of Mississippi, County of ———, . . . The State of Mississippi, by A. B., district attorney for the ——— judicial district' " informs the court of the causes

of forfeiture, and the prayer is in these words, " 'Wherefore the State of Mississippi, by said district attorney, prays judgment of forfeiture and ouster against said corporation.' "

In view of the obstacles set by these definite recitals, the burden of the attack is shifted to rationalizing processes, and the chosen arena is one of mere propriety. Such considerations are long since absorbed into the expressed judgment of the legislature. The time has passed for debating the wisdom of the statute, and all historic arguments once available in the absence of enactment are purely academic. The possibility of conflicting authority dormant in the alternative procedure "by the attorney general or the district attorney" is a fitter source of reassurance than of calamity. The remote possibility,— and I do not pause to conjure up any illustrative incident—that information in the nature of a quo warranto may be lodged against the governor, invokes a situation in nowise here presented. In such case, if it could exist, propriety may suggest a paramount duty and responsibility upon the Attorney-General to proceed. But suppose the latter chose not to proceed or adjudged the occasion unwarranted. Who, in such event, would or could compel him to proceed? In this connection, it is interesting to note that a District-Attorney may prosecute a state official for misdemeanor in office and thus effect his removal from office. Code 1942, Section 4053. Before abandoning the speculative field, it may just as relevantly be asked who may proceed by quo warranto against an Attorney-General? The simple correlative "or" is in fact a potent catalyst to resolve both propriety and embarrassment and to neutralize the probabilities of either.

It may be that, as expressed in the opinion of the Attorney-General, "It is in exceptional cases that the Attorney-General will interfere in reference to county and county district offices." Ops. Atty.-Gen. 1931-33, p. 51. Likewise, it may be exceptional for a district attorney

to proceed in a matter of state sovereignty. The right in either is a guarantee of ultimate enforcement of the state's rights and an earnest against conflicting prerogative.

Without following too far afield arguments directed to matters of mere advisability and propriety, I would stress that to allow that occasion may arise in which the judgment or conscience of the two prosecutors may lead to conflicting courses is to assume that one or the other prosecutor may substitute his conscience for the other's duty and his sense of expediency for the other's judgment. That, in proceedings by quo warranto against a state official or a corporation whose activities are state-wide, the Attorney-General should take the initiative is a mere propriety. But, from earliest times our district attorneys have been authorized to bring quo warranto to forfeit corporate charters. Commercial Bank of Rodney v. State, 4 Smedes & M. 439, 12 Miss. 439, was in a popular and technical sense one of state-wide interest. Forfeiture of its charter was sought. That the matter was one of state-wide interest is undeniable. Its array of counsel is a veritable roster of some of the most distinguished lawyers of that or any time. The issue was far reaching. Likewise in Grand Gulf R. & Banking Co. v. State, 10 Smedes & M. 428, 18 Miss. 428, and State v. Commercial Bank of Manchester, 33 Miss. 474. Mere reasoning leads to no sound bases for ignoring the plain language of the statute. We should not entertain a suggestion that one or the other incumbent will possess a better judgment or a higher ability, nor that in a given case flagrant violation may be glossed over with expediency or tact and that such a relaxation of official duty would better become the higher official. To lodge such power in either of two officials is a safer guarantee that the laws will be faithfully executed. The prosecutor in any case merely informs the court of the violation. Regardless of the informant, it is the same court, and the same jury, and the same law, by which the offender is

tried. Could anyone argue that either the judge or the jury would be more or less influenced according to the identity of the pleader? In the end, it is the judgment of the court or jury which prevails. The only room for play of discretion is in adjudging whether proceedings will be instituted. A dual control over this discretion is more apt to insure that an unwarranted laxity in a single official will be overruled by an unwavering rigidity in the other. Nor is the danger greater that an unjustified civil procedure will harass a corporation than that a citizen will be persecuted by criminal process. I would record a dissent from the setting up of any jurisdictional frontiers between the powers of the Attorney-General and the district attorney fashioned hap-hazardly from the materials of the phrase "state-wide interest." No definite cases can be confined within the purported formula. It is true the phrase was used in Capitol Stages, Inc., v. State, 157 Miss. 576, 128 So. 759, 764. The language used was "It might properly be said that the collection of fines and penalties for the state are matters of state-wide, rather than of local, concern." This expression seems to presage a view that a state-wide interest is not a safe or definite criterion. Yet it was thereupon added "As to all litigation, the subject-matter of which is of state-wide interest, the Attorney-General alone has the right to represent the state."

Following what I view as by-paths of digression, it may be asked what is a proper test of an interest that may be catalogued as state-wide? Is it a matter in which the citizens of the state would manifest personal interest? Such case is presented by even a local prosecution of murderous gangsters whose crimes have terrorized the entire state. Is it a matter in which the interest of the state as a sovereign entity is affected? All crimes are crimes against the state and are so prosecuted by the district attorney. Is it, then, a matter whose geographical ambit is co-extensive with the state's boundaries? Then, no such case is here presented. For all the record here

reveals, there is but a single defendant who methodically and with the cool deliberation of a contemptuous defiance is flouting the written laws of the state in a single locality. There is no contention that its operations extend beyond the City of Jackson. A criminal prosecution against it could be and was conducted by the district attorney. The "state-wide interest" detected in the Capitol Stages case is derivative of the circumstance that the highway which it was alleged to be impairing by its inordinate use ran through the state. It was thus a geographical test. It should be sufficient to read this case out of any relevancy by recalling that it was not a proceeding by quo warranto but by injunction. No controlling statute foreclosed a discussion of the propriety of confining the responsibility to the Attorney-General. Regardless of the reasoning by which the district attorney was denied the right to sue, it was invited by the absence of a clear enabling statute. Had the appellant there been proceeded against by information in the nature of quo warranto, there would have been no open and unexplored field in which reason could range. An examination of·our statutes, Code 1942, Sections 1120-1145, would reveal immediately that the district attorney is authorized to proceed, and that the objects of his attack are corporations acting under charter or franchise of the state. If, therefore, the penalty consists of the ouster from these rights, are they to be first stamped as "of state-wide interest" and thereupon dislodged from the statute and thrown beneath the weight of Capitol Stages, Inc.? Is the corporate life of a legal creature, vouch-safed by the grace of the state, of more dignity and sanctity than that of an individual who is a component part of the state? If its directing head is within the district, it may be there punished criminally even though its penalties result in its corporate death. It should enjoy no immunity from civil responsibility when the bases for its ouster are the very crimes for which the district attorney could call it to account. It would be a mere incident that

as a result of a fatal blow upon its head in Hinds County its extended tentacles or members should writhe into inert insensibility throughout the state. A convicted murderer defiant of the state's laws is prosecuted by the district attorney and when hanged by the neck dies throughout the state.

In the prosecution for crimes, which is more important since ouster becomes a subordinate penal incident thereto, it is the primary duty and function of the district attorney to proceed in the district over which he has been made the legal overseer. In the one case the state prosecutes for violation of its laws, in the other it penalizes for the breach of its contract of franchise. Is it of more state-wide interest that one of the state's creatures should be punished civilly than criminally?

To reason that the relief here sought would preclude the appellant from operating picture shows anywhere in the state while competitors may continue to violate the written law would be rather a criticism of the prosecutors in such other districts than of the local prosecutor. This may indeed reveal the wisdom of the legislature in vesting like power in the Attorney-General so that the judgment of a local prosecutor impaired or clouded by a constraining local sentiment may be overridden by the detached judgment of a superior official. It is quite as logical to invert the illustration and assume a situation where a local prosecutor impelled by an interest in, and a responsibility for, the preservation of local order may find in the indifference of the other an occasion to assert his own initiative. So far as the record here shows, it is a matter purely of local or private interest. Conceivably a judicial declaration that the law is greater than the citizen may have reverberations throughout the state among those who may have thus defied it with impunity. It is easy to multiply illustrations as to the far reaching effects in supposed instances. This is but the argument of mere bigness. It indulges the assumption that there are some who are bigger than the law. It is true, so far as the record here is interpreted, that

appellant seems to have entertained such assumption. The testimony indicates that its daring challenge to the law was addressed to a supposed popular sympathy and, its assumption that juries would ignore the instructions of the trial judges appears to have been justified. No sinister implication is here intended, and no adverse criticism is to be implied of a judicial process whereby jury prerogative must be upheld. It is inescapable from the record before us, however, that the juries tried the law and not the defendant.

It must be stated once for all that neither the merits of the case nor the nature of the charge are held in view here. Our concern is not with legislative wisdom nor popular fancy. A discerning analysis of the majority view may detect a trace of judicial irony in a situation where a defendant's confidence that the letter of the substantive law would be ignored to his profit should find echo in our ignoring of the letter of the remedial statute, and that while the thrust of the criminal prosecution is deflected by a shield of popular sympathy, the edge of the civil remedy is likewise blunted by judicial construction. The letter and spirit of the law authorize the procedure here followed. One need not forbear to borrow from legend the spectacle of one who with Cadmean strategy has plucked from the law its own teeth and sown them throughout the record to reap a harvest of judicial dissension to his own salvation.

I am requested by the Chief Justice to say that he concurs in the foregoing opinion.