STATE, ex rel. ATTORNEY GENERAL *v.* LAND

No. 40386 June 10, 1957 95 So. 2d 764

*Wm. G. Burgin, Jr.,* Columbus; *Ney M. Gore, Jr.,* Marks, for appellant.

*J. D. Guyton, John D. Guyton,* Kosciusko; *Helen J. McDade,* DeKalb, for appellee.

538

APPELLANT IN REPLY.

540

ETHRIDGE, J.

This case originated with a petition or information filed by Joe T. Patterson, Attorney General of the State of Mississippi, for a writ of quo warranto against appellee, J. Chandler Land, who is serving as the Superintendent of Public Education in Kemper County, on the ground that he unlawfully holds and exercises that public office, and for the purpose of trying his right to that office.

The case involves three questions: (1) Whether Section 9 of Chaper 10, Miss. Laws 1953, Ex. Sess., is constitutional; (2) if so, whether in fact appellee Land fails to qualify under that statute; and (3) whether the undisputed facts would permit any discretionary refusal of the writ.

The circuit court recognized that Land was not qualified under the statute, but, holding the act to be unconstitutional, it dismissed the State's petition. We think the writ should issue.

1.

Section 9 of Chapter 10 is part of the large body of new legislation enacted by the 1953 Extraordinary Session of the Legislature which was directed toward re-

organizing the public school system of the State. It provides: "No person shall be eligible to the office of county superintendent of education unless such person shall hold a certificate to be issued by the state department of education certifying that he holds a Bachelor's Degree and also that he shall hold, or be eligible to secure, a Class A certificate for administrators as defined in the rules and regulations of the State Department of Education covering the certification of instructional personnel, one-half of the work in which shall have been in school administration, awarded by an institution approved by the state department of education, and that he has not less than five (5) years' actual experience in an administrative position in some public school of the State of Mississippi, or of a state extending reciprocal licensing of teachers to the State of Mississippi; provided that no person who is serving as county superintendent of education at the effective date of this act shall be ineligible for the office of county superintendent of education because of lack of the qualifications prescribed by this section. It shall be unlawful for the election commissioners of any county to place the name of any person upon the ballot as a candidate for county superintendent of education who does not qualify under the terms of this act; and, in counties wherein such office is appointive, it shall be unlawful for the county board of education to appoint a person to such office who does not qualify under the terms of this act."

It will be noted that this act expressly states that no one shall be eligible for the office unless he meets certain specified requirements. And it further makes it "unlawful for the election commissioners of any county to place the name of any person upon the ballot as a candidate for county superintendent of education who does not qualify under the terms of this act."

▮▮▮ In its broadest sense quo warranto is a writ of inquiry as to the warrant for doing acts of which com-

plaint is made. It is the remedy by which the state determines the legality of a claim which a party asserts to the use and exercise of an office or franchise. 44 Am. Jur., Quo Warranto, Section 2. The writ came into existence at some unascertained period early in the history of the common law. In Mississippi it is defined in a chapter in the Mississippi Code of 1942, Sections 1120-1145.

One of the functions of the writ at common law and under the statutes is to serve as an appropriate and adequate means for determination of the right or title to a public office, and to oust an incumbent who is unlawfully holding the same. Ibid., Section 22. Code Section 1120 provides for the use of the writ of quo warranto in ten different types of cases, and in part, states:

"The remedy by information in the nature of a quo warranto shall lie, in the name of the state, against any person or corporation offending in the following cases, viz.:

"First. — Whenever any person unlawfully holds or exercises the functions of any public office, civil or military, or franchise, or any office in any corporation, city, town, or village, and to try the right to any such office."

Section 1128 states: "All such informations shall be deemed civil proceedings, and shall be put at issue and tried at the return term according to the rules which govern the trials of other civil causes."

And Section 1129 describes the judgment to be rendered: "If judgment be against the defendant, finding that he has been exercising the functions of an office without authority, he shall be removed from office and debarred therefrom, and shall pay costs. The court shall order the defendant to deliver over all records, books, and papers in his custody or under his control, belonging to the office, and may make and enforce all orders proper to carry its judgment into effect."

It is well-established that, in a quo warranto proceeding to try the title to a public office, where the

state is the relator instead of an individual claimant, the burden is on the defendant to prove his right or title to the office. It is incumbent upon him to show a good legal title and not merely a colorable one, for he must rely wholly on the strength of his own title. The defendant must show a right de jure and not merely de facto. Jones v. State, 207 Miss. 208, 213, 42 So. 2d 123 (1949); 44 Am. Jur., Quo Warranto, Section 107. ██ █ On the other hand, where a suit is brought on the relation of a private litigant, the petitioner has the burden of establishing his right to the office, because such suit is not a public action, but in the nature of a private suit. State, ex rel., Parks v. Tucei, 175 Miss. 218, 223, 166 So. 370 (1936); Hood v. Cneso, 179 Miss. 234, 174 So. 552 (1937). ██ █ Hence the burden of proof is upon defendant Land in this action brought by the State, through its Attorney General, to contest his legal right to the office.

2.

The State filed this petition for quo warranto on May 12, 1956, about four and one-half months after Land took office as Superintendent of Education for Kemper County. Briefly stated, the petition charged that Land procured his name to be placed on the primary and general election ballots for County Superintendent of Education contrary to the provisions of Section 9, Chapter 10; that he received the highest number of votes in each election, was declared elected, issued a commission, and is now unlawfully occupying the office and performing the functions thereof in violation of the laws of the state.

It was charged that appellee does not meet the qualifications of the statute because he does not hold and is not eligible to secure a Class A certificatae for Administrators as defined in the rules and regulations of the State Board and Department of Education. Land's answer admitted that he did not have and was unable to se-

cure such a certificate. The petition averred that Land does not have twelve semester hours or sixteen quarter hours of graduate credit in school administration, as required by these rules. He admitted that he did not have this requirement.

The petition charged that he does not have five years actual experience in an administrative position in a public school, which the answer denied. It was averred that defendant does not have a certificate of eligibility for the office of County Superintendent, which is required by the statute as a condition precedent to the placing of his name on the general election ballot. The answer in effect admits that defendant does not hold a certificate of eligibility under the 1953 statute, but it pleads affirmatively that Land holds such a certificate from the State Department of Education dated March 3, 1951, which was issued under Mississippi Laws 1938, Chapter 231. However, this statute under which the 1951 certificate was issued, being Code 1942, Section 6253, was repealed by the 1953 Laws, Ex. Sess., Chapter 10, Section 11.

The petition charged and defendant admitted that he had never previously served and was not serving on December 28, 1953, as Superintendent of Education of Kemper County, so defendant does not come within the exception in Section 9 of Chapter 10. Hence the petition alleged that defendant is not legally qualified to hold the office; that he is now usurping it and its functions and powers; and prayed that the court would enter an order ousting him from the office and declaring the same vacant.

In addition to the above admissions in the answer of Land, defendant pleaded that he had received a majority of the votes in the primary and general elections; he denied that it was unlawful for his name to be upon the ballots; admitted that he is now holding the office, and averred that he is holding it in accordance with the stat-

utes prior to 1953. The answer claimed that the 1953 Act is unconstitutional, because it is not authorized by Section 204, is an invalid delegation of legislative power, and contains an unreasonable classification as to incumbents. The answer pleads affirmatively a letter from the Attorney General, dated January 4, 1955, to I. M. Latimer, giving an opinion that service as an On-the-Farm Veterans' teacher constitutes experience in an administrative position; and a decree of the Chancery Court of Kemper County of May 19, 1955, in which, in a suit against the members of the Kemper County Democratic Executive Committee, that court ordered the Committee to place Land's name upon the primary election ballot, holding that the 1953 Act was unconstitutional. The answer concluded that for these reasons the State is estopped from contesting Land's right to the office.

At the hearing in the Circuit Court of Kemper County, there was introduced in evidence a stipulation of facts executed by attorneys for both sides. It admits that defendant does not hold and is "not eligible to secure a Class A Certificate for Administrators as defined in the rules and regulations of the Board of Education of the State of Mississippi, covering the certification of institutional personnel"; that Bulletin 130, entitled " 'Rules and regulations for the certification of instructional personnel' contains the rules and regulations of the State Board of Education covering the issuance of the Class A certificates for administrators"; and that "the Department of Education of the State of Mississippi is the administrative arm of the Board of Education of the State . . . and executes and implements and administers the rules, regulations and policies of the Board of Education. . ."

The stipulation further admits that defendant does not have twelve semester or sixteen quarter hours of graduate credit in school administration, as required by the statute and the rules of the Board of Education. It states

defendant has three years actual experience in an administrative position in the public schools as a high school principal; and he has had about five years experience as a teacher in the On-the-Farm Veterans' school conducted in Kemper County. It admits that defendant has never secured a certificate of eligibility as a candidate for the office of County Superintendent of Education under the 1953 laws. The State Department of Education advised him that he was not eligible for a Class A certificaate, and refused to issue one to him.

Two affirmative pleas made by appellee may be disposed of at this point. The advisory opinion of the Attorney General of January 4, 1955, to I. M. Latimer, Superintendent of Education in Neshoba County, was in response to a letter from Latimer which inquired whether service as an On-the-Farm Veterans' teacher constitutes experience in an administrative position in public schools. The Attorney General's letter noted that this "presents a factual as well as a legal question", but gave the opinion that such teaching would constitute administrative experience. The inquiry of Latimer and the opinion assumed that the person in question had "all the other necessary qualifications." But appellee does not have the other necessary qualifications, aside from holding a Bachelor's Degree. Moreover, we do not think that Veterans' On-the-Farm teaching constitutes experience in an administrative position in public schools, within the terms of Section 9 of Chapter 10.

Land brought a suit against the fifteen members of the Kemper County Democratic Executive Committee. A decree pro confesso was taken against fourteen of them; only one answered. On May 19, 1955, the Chancery Court of Kemper County ordered the Committee to place Land's name on the primary election ballots, holding the 1953 statute was unconstitutional and he had qualified under the 1944 Act, Laws of 1944, Ch. 189, which was repealed in 1953. But this decree of the

chancery court against the Kemper County Democratic Executive Committee is of course not binding upon the State or the Attorney General in the present suit, since they were not parties to the former action.

The circuit court observed that there is no real issue concerning appellee's failure to comply with the statute. The only question is whether Section 9 violates Section 204 of the Constitution. The trial court held that it does, concluding the Legislature does not have the authority to prescribe any qualifications for an elected county superintendent of education other than that he should be a qualified elector, as prescribed by Constitution Section 250. So the judgment of the circuit court held that the statute is unconstitutional, Land was qualified to occupy and hold the office, dismissed the State's petition, and denied the requested writ of quo warranto. This appeal is from that judgment.

3.

An appraisal of the constitutional issues must be based upon an understanding of the constitutional and legislative history of the office of county superintendent of education in Mississippi.

Section 4 of Article 8 of the Mississippi Constitution 1869, which was in effect before the present Constitution of 1890, provided: "There shall be a superintendent of public education in each county, who shall be appointed by the board of education, by and with the advice and consent of the senate, whose term of office shall be two years, and whose compensation and duties shall be prescribed by law, Provided, That the legislature shall have power to make said office of county-school superintendent of the several counties elective as other county officers are." It is noted that this provision did not state that the Legislature could prescribe qualifications.

In Burnham v. Sumner, 50 Miss. 517 (1875), Sumner filed an information in the nature of a quo warranto, in

which he alleged that he was appointed by the state board of public education as county superintendent of public education for Holmes County, and was confirmed by the Senate in January 1875. Burnham answered that he had been appointed to such office in November 1872, and claimed that he had the right to hold over until his successor was duly appointed. It was admitted that Sumner was never examined by the State Board of Examiners, and did not procure a certificate from the State Board of Education as required by the Act of 1873. It was held that the statutory requirement that Sumner must hold such a certificate was a legitimate exercise of legislative power, so the relator Sumner was not entitled to the office. Hence the trial court was reversed and the information dismissed. It was also held that, since the Constitution did not authorize a county superintendent to hold over, respondent Burnham had no right to hold the office.

Wynn v. State, 67 Miss. 312, 7 So. 353 (1889), was also decided under the 1869 Constitution, a short time before the Constitutional Convention of 1890. An Act of 1888 provided that in Yalobusha and other named counties the county superintendent of education should be elected. Section 2 stated that no person shall be eligible who does not hold a first grade certificate. Wynn was elected to this office in Yalobusha County in November 1889, and entered upon its duties. The District Attorney on behalf of the State filed an information in the nature of a quo warranto to try his right to the office. The respondent had a certificate dated 1886, which the court held was not the required certificatte. The trial court held for the State, but on appeal the case was reversed. Construing the 1869 Constitution, including a provision that all qualified electors are eligible for public office, the Court held that the act requiring a first grade certificate was invalid. The Legislature was not authorized by the Constitution to increase the qualifications for

county superintendent of education. The Court impliedly but not expressly overruled Burnham v. Sumner.

In less than a year after Wynn v. State, the new Constitution of 1890 became effective. Section 204, with which we are here concerned, provides: "There shall be a superintendent of public education in each county, who shall be appointed by the board of education by and with the advice and consent of the senate, whose term of office shall be four years, *and whose qualifications, compensation, and duties, shall be prescribed by laws*: Provided, That the legislature shall have power to make the office of county school superintendent of the several counties elective, *or may otherwise provide for the discharge of the duties of county superintendent, or abolish said office.*" (Emphasis added.) As contrasted with the clause in the 1869 Constitution, it is noted that Section 204 of the 1890 Constitution expressly provides that the Legislature may prescribe the qualifications of the county superintendent of education, or may otherwise provide for the discharge of his duties, or may abolish the office.

Judge George Ethridge, in his Mississippi Constitutions (1928), pages 373-374, states that the design of the Convention was to reserve control of the educational interests of the State in the Legislature; that the clause authorizing the Legislature to fix qualifications "was designed, among other things, to permit the Legislature to require certian educational qualifications"; and that under the 1869 Constitution the Court had held that the Legislature could not "require additional qualifications to that of being a qualified voter."

Pursuant to Section 204 of the 1890 Constitution, the Legislature promptly began establishing educational qualifications for county superintendents of education. It first made them applicable to superintendents who were appointive only. Code 1892, Sections 4257-4264. A committee of three examiners was appointed by the State Board of Education. No one could be a county

superintendent unless he passed the examination provided for him by such state board of examiners. See also Code 1892, Section 3964.

However, at least as early as 1906, the Legislature, acting under Constitution Section 204, began requiring additional educational qualifications for elected county superintendents of education. And beginning in 1906 all county superintendents of education were elected. Code 1906, Section 4809. That statute further provided: "Before any one shall be elected to the office he shall have attained the age of twenty-one years, and shall be a qualified elector and a resident citizen of the state for four years and of the county for two years immediately preceding his election, and shall have passed the examination provided for in the section following the next one and have received a certificate accordingly."

Code 1906, Section 4811, further provided: "All applicants or candidates for the office of county superintendent shall pass an examination on the branches required for first grade license, and in addition on the art of teaching. The examination shall be held in the county of the applicant by the state board of examiners, under regulations passed by the state board of education. Candidates or applicants who prefer to take the examination at Jackson can do so by giving the superintendent of education ten days' notice by registered letter."

Since 1906 the Legislature has continuously exercised its power under Constitution Section 204 to require county superintendents of education to pass certain examinations, to meet stated minimum educational requirements, and to have a certificate of eligibility from the State Board of Education before they were eligible to run for the office.

By Chapter 283, Miss. Laws 1924, the State enacted new legislation dealing with county superintendents of education. It was embodied in Miss. Code 1930, Section 6559-6580. Section 6559 created a state board of examin-

ers appointed by the State Superintendent of Education. Their duties were to prepare examinations for teachers, to grade applications, renew licenses and "to examine all applicants or candidates for the office of county superintendent of education under regulations passed by the state board of education." They must be elected in each county. Section 6562.

Section 6563 provided: "Before anyone shall be eligible to the office of county superintendent he shall be a qualified elector and a resident citizen of the state for four years and of the county for two years immediately preceding his election. He shall also hold a certificate attesting that he possesses the following educational and professional qualifications:

"1. Be a graduate of a high school requiring at least fifteen units for graduation, or the equivalent thereof.

"2. He must have had at least two years of successful experience as a teacher in the public schools of the state, or be a graduate of a standard college.

"3. Pass the examination required by law.

"4. The state board of education shall enforce the requirements of this section."

Code 1930, Section 6564, further stated: "All applicants or candidates for the office of county superintendent of education except those who hold professional life licenses, shall pass the examination on the branches required for first grade license, which license shall be subject to renewal under rules and regulations of the state board of education. The examination shall be held in the county of the applicant on questions prepared by the state board of examiners; the papers shall be graded and the results of such examination shall be made known speedily to said applicant by the state board of examiners. Candidates or applicants who deside to take the examination at the state capitol may do so, under regulations of the state board of examiners."

In 1938 the Legislature again raised the standards for elected county superintendents. Laws 1938, Chapter 231, provided that ''before anyone shall be eligible to hold the office of county superintendent of education'' he must be a qualified elector, a citizen of the State for four years and of the county for two years. It further stated: ''He shall also hold a certificate attesting that he possesses the following educational and professional qualifications:

''1. For the term beginning the first Monday in January, 1940, and thereafter, he must have had not less than two years of college training in an institution approved by the state board of examiners and in addition thereto must have had not less than two scholastic years of experience as county superintendent, school superintendent, supervisor or teacher in the public schools of the state; or he shall have had not less than four (4) years of college training in an institution approved by the state board of examiners.

''Sec. 2. A candidate for the office of county superintendent of education must hold a valid certificate from the state board of examiners certifying that he possesses the qualifications required by this act, and it shall be unlawful for the election commissioners of any county to place on the ballot the name of any candidate not so certified. For each such certificate issued by the state board of examiners shall be allowed a fee of one dollar to be paid by the candidate applying for the same.''

In 1944 the Legislature revised some of the organization of the State Department of Education, and also a few provisions with reference to county superintendents of education. Miss. Laws 1944, Chapter 189. Section 1 re-enacted the above-quoted Chapter 231, Laws of 1938, except it provided that the institution must be approved by the state board of education rather than the state board of examiners, and the candidate must hold a valid

certificate from the "division of certification", rather than from the "state board of examiners."

Before reaching the 1953 changes in the qualifications for candidates for county superintendent of education, two significant cases, which were decided after the effective date of Constitution Section 204, should first be analyzed.

McCool v. State, ex rel., Howie, District Attorney, 149 Miss. 82, 115 So. 121 (1928), is important because the court contrasted the constitutional provisions concerning qualifications for candidates for municipal aldermen and county officers with those of county superintendents of education. The district attorney filed a petition for quo warranto against three aldermen of the City of Canton. Code 1906, Section 3430, created certain limitations on the budgets of municipalities, and stated: "In case of an increase of indebtedness not so authorized, the mayor and aldermen shall not succeed themselves or each other." The three respondents were each elected to another term of office. This suit was brought to remove them because in their prior terms they had violated the quoted statute. The question was whether the Legislature could impose upon candidates for aldermen a disqualification in addition to that provided for in Constitution Section 250, which states, "All qualified electors and no others, shall be eligible to office, except as otherwise provided in this constitution." It was held that Section 250 applies to municipal and other statutory offices, and, where the constitution itself has not provided to the contrary, Section 250 prescribes the only qualifications required for public offices. Hence the quoted part of Section 3430, Code of 1906, was invalid.

Significantly, the Court contrasted this situation with that concerning county superintendents of education. It first discussed Wynn v. State, supra, noting that the 1869 Constitution gave the Legislature no power to add qualifications, and said: "This decision was rendered at the

October term, 1889, the year preceding the constitutional convention of 1890, and must have been fresh and clear in the minds of the members of that convention. The fact that it was in their minds is apparent from the fact that the qualification for county superintendent was provided for in section 204 of that Constitution, and the legislature was given power to prescribe the qualification, compensation, and duties therefor in express terms.''

In Wilkins v. Large, 163 Miss. 279, 141 So. 585 (1932), the Court expressly upheld the additional educational qualifications for county superintendents of education required by Code 1930, Sections 6560 and 6563. This was a quo warranto proceeding in the name of the district attorney on the relation of Large against Wilkins to try the right to the office of superintendent of education of Wayne County. Petitioner Large alleged that he was duly elected in November 1931 to the office for a four year term beginning January, 1932; that defendant Wilkins was superintendent of education of the county with his term expiring December 31, 1931; that on January 1, 1932, petitioner demanded of Wilkins possession of the office, which was refused. To this Wilkins pleaded: (1) Petitioner had not been a resident citizen of the State for four years and of the county for two years immediately preceding his election; (2) Large was not eligible because he did not hold certificate of eligibility as required by the act, which required him to be a graduate of a high school, or have two years experience in teaching, or a graduate of a standard college, and required him to have passed an examination; and (3) Large had not paid a poll tax for the two years preceding his election. Petitioner Large demurred to these three pleas, his demurrer was sustained, and, defendant declining to plead further, final judgment was entered removing Wilkins from the office and installing Large.

On appeal that decision was reversed and remanded. It was stated that Wilkins had the right to contest Large's

claim to the office. After quoting the statute requiring a certificate of eligibility, the Court held that the first and second pleas of defendant were not demurrable, and said: "Section 204 of the Constitution provides, among other things, that the qualifications, compensation, and duties of the county superintendents of education shall be prescribed by law. In pursuance of that constitutional authority, the Legislature enacted Sections 6560 and 6563 of the Code of 1930, and other provisions in the Code chapter on schools. Section 6560, among other things, provides that the state board of examiners shall examine all applicants or canditates for the office of county superintendent of education under regulations passed by the state board of education."

It was further held that the statute establishes "experience and educational qualifications", and, in a contest involving his eligibility, the courts may inquire into whether the elected county superintendent of education meets the statutory requirements. "On the other hand, if he lacks the requirements provided by the first clause of the statute, or does not possess the certificate as to his educational and professional qualifications provided by the statute, he is ineligible to the office, and the courts will so adjudge." So the first and second pleas set up good defenses. (It was not necessary to pass upon the third.)

In brief, Wilkins v. Large expressly upholds the constitutional validity of the statutes requiring additional educational qualifications for elected county superintendents of education; and further holds that, if he lacks the statutory qualifications, "he is ineligible to the office, and the courts will so adjudge." Aside from other reasons stated, this case is directly in point and controlling here in favor of the validity and enforceability of Section 9.

## 4.

At the Extraordinary Session of 1953 the Legislature completely revised the State's educational laws and again raised the qualifications for county superintendents of education. Chapter 10, Section 8 (a) requires that he must be a qualified elector, a citizen of the State for four years and of the county for two years immediately pre-ceeding his election. Appellee complies with these cit-izenship standards. Chapter 10, Section 9, quoted above, then establishes the qualifications of experience and training which appellee agrees he does not meet. More-over, the testimony is undisputed that he fails to meet such requirements.

A Class A Certificate for Administrators is defined in the rules and regulations of the State Board of Educa-tion covering the certification of instructional personnel, and is referred to in Section 9 of Chapter 10 and made a part of the stipulation in this case. These rules contain the rules and regulations of the State Board of Education covering the issuance of such certificates; and the De-partment of Education is the administrative arm of the Board of Education, executing and administering the rules, regulations and policies of the Board.

Code 1942, Section 6281, provided: ''The state board of education is hereby authorized, empowered, and direct-ed to set up, as soon as practicable after the passage of this act, rules and regulations governing the issuance of all teachers' certificates, and to administer said rules and regulations. Such rules and regulations shall not be changed without giving a minimum notice of one year to all holders of teaching certificates affected by this act.'' This act was first passed in Miss. Laws 1938 Ex. Sess., Chapter 44. It was repealed by Miss. Laws 1953, Ex. Sess., Chapter 20, Sec. 28. But it was re-enacted and strengthened in Chapter 20, Section 27 of the 1953 Laws: ''The state board of education is authorized,

empowered, and directed to adopt and promulgate rules and regulations governing the issuance of all teachers' certificates and to administer said rules and regulations. It is the purpose of this section to continue in existence the power and authority previously conferred upon the state board of education by section 6281, code of 1942, as last amended by chapter 279, laws of 1948, and the rules and regulations adopted by the state board under the said statutes shall remain in full force and effect until changed in the manner provided by law.''

It will be noted that Section 27 expressly provides that the existing rules of the state board shall remain in full force and effect, and adopts them.

These rules state: ''This bulletin contains the rules and regulations of certification adopted by the state board of education.'' The foreword to them notes that the statutes place in the hands of the State Board of Education the duty of setting up and administering teacher education and certification.

Miss. Code 1942, Sections 6245-01 through 6245-14, as amended by Chapter 297, Laws of 1946, set up the State Department of Education, provide its organization, and charge it with the execution of all laws relating to public schools, and ''subject to the direction of the state board of education as provided by law, the administration, management and control of the department is hereby vested in the superintendent of public education, who shall be directly responsible for the rightful functioning thereof.'' Section 6245-02.

Hence the rules of the State Board of Education and Department of Education are recognized and authorized by the 1953 statute, and are carried forward by it. They establish on page 30 the requirements for a Class A Certificate for Administrators, except insofar as Section 9 raises the standards. This is the certificate referred to in Section 9. Appellee's answer admits that he does not have and is not eligible to secure from the Depart-

ment of Education a Class A Certificate for Administrators, and does not have twelve semester hours or sixteen quarter hours of graduate credit in school administration, "in administrative and supervisory fields", as described in the rules. The stipulation filed in this case also contains the same admissions that appellee does not have such qualifications. Therefore the answer and stipulation admit that appellee is not qualified under the statute.

Section 9 requires "not less than five years school actual experience in an administrative position in some public school...". Appellee served as principal for three years. He contends that he met this requirement by adding to his three years as principal fifty-two months during which he taught On-the-Farm Veterans' school classes. Land testified that he taught vocational agriculture to war veterans who were usually over twenty-one years of age. He met the students one afternoon a week in class at the school building, and visited the farms of the students one evening a week. On such visits he supervised their farming, care and maintenance of tools, record keeping, etc. The students kept records, he checked them, and made monthly reports to the State Department of Education. There were three of these classes, with a teacher for each. Neither of the other two teachers were under Land's supervision or administrative control. He did not supervise any school employees or teachers. He taught the students, graded their work and made monthly reports to the State Department of Education. He worked only with the students. There were supervisors over him from the state department. Appellee holds a Grade A teacher's certificate for secondary education. Appellee's teaching work in the veteran's school cannot be considered work in an administrative position. In that sense, every teacher serves in an administrative position, and the statutory requirement would be mean-

ingless. The only persons he supervised were students. His job was to teach them vocational agriculture.

Moreover, the rules of the Board of Education make a distinction between teaching certificates and Class A certificates for Administrators. The latter authorizes one "to serve as superintendent of schools or assistant superintendent of schools". The graduate college work must be "in adminisrative and supervisory fields", and "in school administration." The rules define the duties of a supervisor, principal, assistant superintendent and superintendent. These officers administer a school system, "performing administrative duties", as distinguished from a teacher "to whom is entrusted the instruction of pupils in a grade or subject." So appellee failed to comply also with the statutory requirement that he have five years experience in an administrative position in a public school.

 In addition, appellee admitted that the Department of Education had refused to give him a certificate of eligibility to be a candidate for and to hold the office of county superintendent of education. This is the equivalent of an administrative ruling by the Department that he is not eligible to secure a Class A certificate for Administrators under the 1953 Act. Such certificates of eligibility have been required by statute for at least fifty-one years, since the Code of 1906. Although appellee possesses a certificate under the now repealed requirements of the Laws of 1938, Chapter 231, he does not have and cannot secure such certificate of eligibility under Section 9. Under that statute, it is "unlawful for the election commissioners to place the name of any person upon the ballot as candidate for county superintendent of education who does not" possess such certificate of eligibility.

 In brief it is undisputed under appellee's answer and stipulation, and his own testimony that he wholly fails to comply with the act; he does not have a Class

A Certificate for Administrators, or the required graduate work in school administration, or five years actual experience in an administrative position in a public school, or a certificate of eligibility from the State Department of Education.

### 5.

 Since appellee in fact does not comply with the requirements of Section 9, Chapter 10, the next question is whether the statute is constitutional. The express terms of Constitution Section 204 support its enactment. It gives the Legislature power to fix "qualifications, compensation and duties". Section 204 then goes further and provides that the Legislature "may otherwise provide for the discharge of the duties of county superintendent", thus authorizing performance of the duties of that position by some other officer or in some other way. To make the grant of power to the Legislature even more specific, Section 204 also states that the Legislature may abolish the office. So Section 204 vests in the Legislature, as to county superintendents of education, the full legislative power of the State which is granted by Constitution Section 33.

 Constitution Section 250 provides, "All qualified electors and no others, shall be eligible to office, *except as otherwise provided in this Constitution.*" (Emphasis added.) The contention of appellee, that this provision applies also to county superintendents of education, is contrary to the terms of Section 250, which renders it pertinent "except as otherwise provided in this Constitution." Section 204 otherwise provides in the Constitution for the appointment, or election, or abolition of the office, and vests in the Legislature power to prescribe qualifications, compensation and the duties. So Section 250 does not affect the Legislature's power in prescribing qualifications for county superintendents of education. This distinction from other county offices

was noted in McCool v. State. And in Wilkins v. Large additional educational qualifications and a certificate of eligibility from the State Department of Education were held to be valid exercises of legislative power.

■ ■ Appellee contends that the statute is an unconstitutional delegation of legislative power to the State Board of Education and its administrative arm, the Department of Education. Legislative history concerning county superintendents of education reflects that for more than fifty-one years the Legislature has delegated to the State Board of Education the rule-making power to carry out statutory requirements for qualifications of this office. Wilkins v. Large specifically upheld this grant of power.

■ ■ Chapter 9, Section 10, provides in effect that the State Department of Education, the administrative arm of the Board of Education, has the power to define in its rules and regulations a Class A Certificate for Administrators. It also prescribes certain requirements for such a certificate. Chapter 20, Section 27, Miss. Laws 1953, Ex. Sess., quoted above, is a legislative recognition and adoption of the rules and regulations of the Board "until changed in the manner provided by law." The Board is given power to promulgate rules and regulations governing the issuance of all teachers' certificates, and to administer them. Miss. Laws 1953, Ex. Sess., Chapter 20, Section 27.

■ ■ It has been said, "This Court is committed to a liberal rule governing the delagation of legislative functions." Abbott v. State, 106 Miss. 340, 63 So. 667 (1913). Although the Legislature cannot delegate its power to make a law, it can delegate to an administrative agency the power to determine some fact or state of things upon which the law makes or intends to make its application depend. ■ ■ The essential is that the statute delegating the power must reasonably define the area in which the administrative agency operates and the limitations

upon its powers. Section 9 and the other legislation dealing with licensing of teachers and administrators comply with this requirement. The power exercised is similar to the rule-making power of such agencies as the State Oil and Gas Board and the Workmen's Compensation Commission. The legislative delegation of power to administer the laws with reference to teacher-licensing and the certification of instructional personnel is the basis of the board's rules and regulations designed to. carry out and administer these statutes.

 ██ It is argued that Section 9 is invalid because it contains an unreasonable discrimination in favor of incumbents of the office on the effective date of the act. The clause complained of is: ''provided that no person who is serving as county superintendent of education at the effective date of this act shall be ineligible for the office of county superintendent of education because of lack of the qualifications prescribed by this section.'' It is said that the exemption of incumbents of the office from being required to have the prescribed qualifications in future elections violates the equal protection and due process clauses of the Federal and State Constitutions and, being inseparable from the remainder of Section 9, the entire section must fall.

 ██ A state may classify persons for the purpose of legislation and pass laws applicable only to persons or objects within a designated class, provided such classification is reasonable and not clearly arbitrary. 12 Am. Jur., Constitutional Law, Section 476. ██ The question of classification is primarily for the Legislature. It does not become a judicial question except for the purpose of determining whether it is clearly unreasonable. Great liberality has always been indulged in the matter of classification. It must be looked at from the standpoint of the Legislature enacting it. ██ Hence there is a presumption in favor of legislative classification, of the reasonableness and fairness of legislative action,

and of legitimate grounds of distinction. So if any state of facts reasonably can be conceived which would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. ■■ ■ Although the presumption in favor of a classification is not conclusive and is rebuttable, courts should not declare it invalid unless it is of such a character as to preclude the assumption that it rests upon any rational basis within the knowledge and experience of the legislators. Ibid., Sections 519-521.

Conditions facing the Legislature at the time of the enactment in 1953 of the statutes reorganizing the school system of the state apparently indicated to it that the qualifications for county superintendents of education should be raised. The Legislature had been doing this at frequent intervals over a period of fifty-one years or more. Section 9 increases these qualifications for future aspirants to the office. Apparently the Legislature believed that on the basis of experience, information and knowledge secured while in office, those who were incumbents at the effective date of the act, having acquired such experience, information and knowledge, would be as qualified as those who might be elected in the future without previous experience but who complied with the increased qualifications for the office. Moreover, it may have thought that, as a matter of fairness to incumbents of the office, they should not be precluded from seeking that office again. At any rate, whether these ideas were in the minds of the legislators or not, they certainly furnish a reasonable and just basis for the distinction made in Section 9 between incumbents and aspirants to the office who are not incumbents. So this classification meets the requirements of the law as to reasonableness. Board of Trustees of University of Mississippi v. Waugh, 105 Miss. 623, 62 So. 827 (1913), affirmed in 237 U. S. 589, 35 S. Ct. 720, 59 L. Ed. 1131; Clark v. State, 169 Miss. 369, 152 So. 820 (1934); Miss. State Tax Commission v.

Flora Drug Company, 167 Miss. 1, 148 So. 373 (1933);
State, ex rel., Jordan, District Attorney v. Gilmer Gro-
cery Company, 156 Miss. 99, 125 So. 710 (1930); Stone,
Chairman of State Tax Commission v. General Electric
Contracts Corporation, 193 Miss. 317, 7 So. 2d 811 (1942);
Standard Oil Company, Inc. in Kentucky v. Stone, Chair-
man State Tax Commission, 191 Miss. 897, 2 So. 2d 155
(1941).

### 6.

Since the act is constitutional, and it is undisputed
that Land does not meet the qualifications required by
it, the court's constitutional duty is to enforce the law
as written and grant the relief prayed for by the State.
 ██ Appellee argues that since the court has a
discretionary power in issuing a writ of quo warranto,
that discretion should be exercised here by refusing is-
suance of the writ; and that the State should be barred
and estopped from bringing this action, because of its
delay in enforcing the act, the Attorney General's opinion
with reference to appellee's teaching in Veterans' On-
the-Farm classes, and because the Chancery Court of
Kemper County on May 19, 1955, held that the act was
unconstitutional and ordered the County Democratic
Executive Committee to place his name upon the primary
election ballot.

But the State did not delay bringing this action in an
unreasonable time. The suit was filed on May 12, 1956,
slightly less than four and one-half months after Land
took office. The Attorney General's opinion was direct-
ed solely to whether teaching in Veterans' On-the-Farm
classes constituted experience in an administrative posi-
tion in some public school. Even assuming the correct-
ness of that opinion, it is undisputed that appellee does
not meet other important requirements of Section 9 and
of the rules and regulations of the State Department of
Education. Moreover, this opinion is persuasive but not

determinative of whether in fact appellee complies with this requirement, and we hold that he does not. The decree of the Chancery Court of Kemper County of May 19, 1955, ordering the County Democratic Executive Committee to place appellee's name upon the primary election ballot, is not binding upon the State or the Attorney General, since they were not parties to that suit.

██ ██ The writ of quo warranto is not a writ of right, but issues in the sound discretion of the court. 44 Am. Jur., Quo Warranto, Section 15. The judgment of the circuit court was not placed upon a discretionary exercise of power in denial of the writ. It was based upon the erroneous premise that Section 9, Chapter 10, was unconstitutional. The rule applicable to this case is that stated in State ex rel., Fatzer, Attorney General v. Kansas City, 169 Kansas 702, 222 P. 2d 714, 726-727 (1950): "It is true the court has a measure of discretion in quo warranto proceedings. . . . This is a judicial discretion. It is not to be used without reason and does not authorize a court to ignore a valid applicable statute which has been promptly invoked."

██ ██ And so in the instant case, the judicial discretion which the court exercises in quo warranto proceedings must be used reasonably and in the light of the facts of the case. It is undisputed that appelle does not comply with substantial, and practically all of the requirements of the statute. And the act is valid and constitutional. So our duty is to enforce the act and to issue the writ of quo warranto, finding that appellee has been exercising the functions of the office without authority and removing him therefrom, as provided by Code of 1942, Section 1129.

To support his argument that the court should exercise a discretionary power and refuse the writ, appellee relies upon State, ex rel., Jordan, District Attorney v. Mayor and Commissioners of the City of Greenwood, 157 Miss. 836, 127 So. 704, 129 So. 682 (1930). However, that case

is clearly distinguishable from the instant one. The State brought the suit six years after the city, through its aldermen, had begun exercising jurisdiction over some adjacent territory under an invalid ordinance extending the city limits. The citizens of the adjoining territory had for six years been voting and paying taxes as citizens of the city, and the State had acquiesced in those actions. Ouster of the city officers would simply have been a punitive measure on a technical issue which would have resulted in considerable detriment to the city and to those living in the adjacent area. Moreover, a later statute, which had the effect of abolishing the Town of North Greenwood, rendered ''the whole object of this action . . . vain and useless.'' Most of the other cases relied upon by appellee deal with suits against private and municipal corporations.

In Kennington-Saenger Theatres, Inc. v. State, ex rel., District Attorney, 196 Miss. 841, 873, 18 So. 2d 483, 153 A. L. R. 883 (1944), which was a suit for the forfeiture of a corporation's franchise, it was observed that where statutory grounds for forfeiture exist in a quo warranto action the trial court ''is left no discretion as to whether or not such penalty shall be enforced . . .'' Moreover, appellee does not claim that he is now qualified under the statute. Assuming arguendo that such a circumstance, if it existed, might affect exercise of the court's discretion, it is not possible that it exists in this case, since, among other things, he could not now have five years of experience in an administrative position in a public school. Nor does he claim that he now has a Class A Certificate for Administrators, or a certificate of eligibility from the State Department of Education, or the required graduate work in school administration.

There is no area in this case within which in a sound discretion the writ could be refused by this Court. Failure to enforce the act, as written, in a clear case such as this, where the defendant wholly fails to comply with

the statute, would in effect repeal the act and remove it from the books. That is not a judicial but a legislative function. The establishment and the administration of the school laws of the State touch the lives of every child, parent and citizen. The importance in a sound educational system of an adequate licensing system for teachers and school administrators is manifest. The determination of what those requirements shall be is for the Legislature. Its intentions, as set forth in Section 9 of Chapter 10 and in the rules and regulations of the State Board of Education, apply to the defendant as well as to every other citizen. The final judgment of this Court and the writ of quo warranto will be issued and directed to defendant as prayed for by the State in its petition, adjudicating that defendant has been exercising the functions of the office without authority and removing him therefrom, as provided by Code of 1942, Section 1129.

Reversed and judgment rendered for appellant.

*Hall, Lee, Kyle, Holmes, Arrington* and *Gillespie,JJ.,* concur.

ROBERDS, DISSENTING IN PART:

I concur in the holding that the Legislature had the power to prescribe, in the manner here adopted, the requirements for eligibility of candidates for the office of county superintendent of education for the year 1955. However, the issuance or denial of the writ of quo warranto to eject one from office is addressed to the sound discretion of the court and, in my opinion, the writ under consideration should be denied. I think that the proceedings, under the circumstances in this case, are unjust to Land and serve no good purpose from the standpoint of the public.

The rule seems now universal that the issuance or refusal of the writ is addressed to the sound discretion of

the court. In 44 Am. Jur., page 96, Section 15, the rule is stated in this language: ''Although originally the writ of quo warranto was a writ of right, it is in modern times, and generally speaking, not of that character, but issues in the sound discretion of the court, even where the state is seeking the writ, and this discretion in regard to the proceeding is in some states recognized by statute. This is rightly so, for the writ, or a judgment of ouster thereunder, is one which may have drastic consequences affecting the public welfare. In exercising such discretion, the court may and should consider all the circumstances in the case, including lapse of time and circumstances which would establish laches, acquiescence, or estoppel, and whether the public interest will be served, for the court may refuse the writ or judgment of ouster upon considerations of public policy, interest, or convenience. Where, in quo warranto to test the right of a city to exercise jurisdiction over certain territory, a judgment of ouster would cause confusion or disaster in the administration of the affairs of the city, and it does not appear that its refusal would be detrimental to the public interests or prejudicial to the constitutional rights of the citizens, duly claimed and asserted, the court has the power to refuse judgment of ouster.''

In State, ex. rel., Jordan v. Mayor and Commissioners of City of Greenwood, 157 Miss. 836, 127 So. 704, on the suggestion of error reported in 129 So. 682, this Court said: ''Although the opinion heretofore delivered in this case did not in express words so say, it carries the implication, as fully as if said, that we intended to hold and did hold that we would exercise the discretion to consider all the circumstances of a case, in quo warranto, and if on a full view of these circumstances it appeared clear that the public welfare not only would not be promoted, but the reverse would be the result, and that by reason of the lapse of time harm rather than good would

result to the public interest, we would decline to interfere in a proceeding in quo warranto designed to 'disturb the peace and quiet' of any public or quasi public corporation, and that the doctrine of laches would be applied in such cases, although not ordinarily applicable in proceedings by the state. In other words, in such a proceeding we would not consent that the principle that no lapse of time runs against the state, a doctrine established to promote the interests of the state and to save it from harm, shall be reversed in its purpose and be so used as to harm the state and the general welfare. The language has often been used in this court that that which is designed as a shield shall not be permitted to be turned into a sword.''

These are the facts and events which brought about the present situation: Land was a school man. The general election was coming up in 1955. In the latter part of 1954 many of the voters solicited Land to make the race for County Superintendent of Education of Kemper County. Land held a certificate of eligibility for that office dated March 3, 1951. Some changes had been made in the law. There was some question whether Land was then eligible for the office under the strict requirements of the State Department of Education as the Department might interpret them. Land sought the advice of his friend I. M. Latimer, who was Superintendent of Education of Neshoba County. They decided to write the Attorney General of the State of Mississippi. Mr. Latimer did that under date of December 9, 1954. The Attorney General replied on January 4, 1955. Latimer and Land interpreted the reply, whether rightfully or wrongfully, to mean that Land was eligible as a candidate.

Land then requested a Class A Certificate for Administrators be issued to him by the State Department of Education, giving that department his scholastic and educational qualifications. He was advised by that depart-

ment that it did not consider him entitled to a Class A Certificate. The grounds for refusing this certificate are somewhat confusing because the agreed statement of facts in this case recites that "the State Department of Education of the State of Mississippi has no rules or regulations which define a Class A certificate for administrators, and has no rules or regulations covering certification of instrumental personnel." It may be pertinent to here state that Land had had three years actual experience in the administrative postition in the public schools of Mississippi as a high school principal and five years experience as a teacher in the On-the-Farm Veterans' School in Kemper County under the direction of the State Board of Education. He was a graduate of Mississippi State College, had a BA degree from that institution, had eight semester hours of credit in the School of Education at Mississippi Southern College and, as stated, had a certificate of eligibility dated March 3, 1951.

Land then, in order to be sure of his eligibility, instituted a proceeding in the Chancery Court of Kemper County against the members of the Kemper County Democratic Executive Committee to determine whether his name should be placed upon the ballot as a candidate for County Superintendent of Education. This matter was heard at the county courthouse on May 19, 1955, before a large gathering of the citizens of Kemper County. On that date the chancellor held that Section 9, Chapter 10, Acts of Ex. Sess. of 1953, purporting to define the eligibility of those occupying the office of county superintendent of education, to be unconstitutional, and further held that Land had the qualifications for that office and ordered the Executive Committee to have Land's name printed on the ballots used in the primary election. A certified copy of the decree was delivered to the executive committee and Land's name was printed on the ballot for

the primary election to be held August 2, 1955. There was no appeal from this decree.

It appears that there were three candidates for the office and Land received a majority of all of the votes cast and was nominated as the Democratic candidate at said first primary. The County Election Commissioners placed Land's name upon the ballot for the general election to be held in November 1955, and the agreed stipulation between counsel, says he "was elected to said office by an overwhelming majority" of the votes cast in the said general election. Land was issued a commission as Superintendent of Education of Kemper County by the Secretary of State and the Governor of Mississippi, as provided by law.

He executed bond, took the oath of office, and entered upon his duties the Second Monday in January 1956.

Some four and one-half months thereafter the present quo warranto petition was filed.

The agreed stipulation of counsel recites that "in order to accept said office of County Superintendent of Education of said Kemper County and enter into, occupy and discharge the duties thereof, Respondent necessarily gave up his work and avocation and profession of teaching and superintending public schools in said Kemper County by means of which he customarily earned a livelihood." The agreed stipulation further recites that "An appreciable number of persons who did not hold and were ineligible to obtain the Class A Certificate for administrators therein mentioned, became candidates for the office of County Superintendent of Education in the general election held in November, 1955, and were elected to said office, and were issued commissions to hold said office, and now (June 8, 1956) occupy and hold said office in the same manner as your Respondent."

It will be noted too in this connection that Chapter 10 of the Ex. Sess. of the Legislature of 1953, changing the eligibility requirements of candidates for the office of

county superintendents of education, exempted from the requirements those in office on the effective date of the passage of the act, to wit, December 28, 1953. This, in effect, exempted from the eligibility requirements eighty-two prospective candidates. This at least indicates that the possession of the requirements which the State Department of Education might impose were not absolutely essential to the qualifications of candidates for said office.

It is clear to me that it would be unfair and unjust to now eject Land from the office.

Nor is it perceived just how the public interest would be served by the ejection of Land. In the first place no one else is claiming a right to the office. This is not a contest between two people claiming the right of occupancy of one office. No one is being deprived of his individual rights. If Land is put out there must be the expense and trouble of another election. Nowhere in this record is it claimed that Land is not, as a matter of fact, well qualified to fill the office or that he has not done so in a most satisfactory manner. For ought that is shown here, he is as good a county superintendent of education as the State affords. Indeed, his qualifications above set out would seem without question to qualify him in fact to be county superintendent of education. Another, taking Land's place, might be far less efficient than is Land. Land may, or may not, be eligible when the ultimate time arrives for selection of his successor. That can only be determined by the facts and circumstances, including the rules and legislative enactments, which may exist at the time. Any attempt to adjudicate that question now would be pure dicta. The question is not before us. But he may sincerely and honestly think he is qualified and make the race and receive the greater number of votes, thus bringing about the anomalous situation of an ejected man being re-elected to the office from which he was ejected. But this only adds to the public

confusion. Apparently, since his unexpired term is to run longer than six months, his successor will be appointed by the board of supervisors to serve until succeeded by one elected at a special election, who, upon certificate by the board of supervisors, will be commissioned by the Governor. Section 3293, Vol. 3, Miss. Code 1942 Recompiled. Again, Land has drawn his compensation as county superintendent of education. Is suit to be instituted in an effort to recover what he has been paid? It is disclosed in this proceeding that there are some eight other county superintendents in the State in substantially the same situation as is Land. Are eight other quo warranto proceedings to be instituted to eject these eight from office? If they are ejected, then the question of recovery from them of the money they have received naturally arises, as well as the matter of the expense and inconvenience of eight special elections, with the incidental disruptions of the educational systems in nine counties of the State. There will be involved also the question of the appointment of nine county superintendents of education to act from the time of ejection of the present occupants to date of induction into office of the newly elected officers. It seems to me that nothing can come from sustaining this quo warranto proceeding except private injustice to Land and confusion and expense to the public. If the people want a change they can make it at the next primary.

In my view fairness and sound discretion call for denial of this writ. More harm than good will result from its issuance. There will be confusion confounded.

Chief Justice McGehee, who presented this case to the conference en banc in the first instance, and who is now absent because of illness, has requested me to say that he joins in this dissent, and that he also thinks that the provisio in Section 9, Chapter 10, Laws of the Ex. Sess. 1953, is inseparable from the remainder of the section, so as to render the same unconstitutional as a classifi-

cation of candidates for County Superintendent of Education, there being no difference between the experience possessed by incumbents of the office on the effective date of the Act and former incumbents.

*McGehee, C. J.,* joins in this dissent.

## ON SUGGESTION OF ERROR

September 23, 1957 96 So. 2d 828

HALL, J.

Chief Justice McGehee and Associate Justice Roberds adhere to the views expressed by them in the dissenting opinion written by Judge Roberds when this case was originally decided by this Court. They, therefore, are of the opinion the suggestion of error should be sustained.

The other members of the Court are of the opinion the suggestion of error is not well taken, which necessarily results in its being overruled.

Suggestion of error overruled.

*Lee, Kyle, Holmes, Arrington, Ethridge* and *Gillespie, JJ.,* concur. *McGehee, C. J.* and *Roberds, J.,* dissenting.