381 So.2d 1046 (1980)
Howard D. CLARK, M.D., Gilbert R. Mason, M.D. and William A. Middleton, M.D.
v.
STATE of Mississippi ex rel. MISSISSIPPI STATE MEDICAL ASSOCIATION et al.
No. 51602.
Supreme Court of Mississippi.
March 26, 1980.
Binder & Moore, Alvin M. Binder, Herman C. Glazier, Jr., Jackson, for appellants.
A.F. Summer, Atty. Gen., by Larry J. Stroud, Special Asst. Atty. Gen., Wise, Carter, Child, Steen & Caraway, James K. Child, Jr., J. Leray McNamara, Jackson, for appellees.
Before ROBERTSON, P.J., and WALKER and BROOM, JJ.
*1047 ROBERTSON, Presiding Justice, for the Court:
On April 15, 1977, the State of Mississippi on relation of the Mississippi State Medical Association, S. Lamar Bailey, M.D., et al., filed an Information in the Nature of a Quo Warranto in the Circuit Court of the First Judicial District of Hinds County, Mississippi, challenging the authority of Doctors Howard D. Clark, Gilbert R. Mason and William A. Middleton to serve as members of the Mississippi State Board of Health.
In its Information, the State and the Relators alleged, among other things, that no one of the defendants was nominated by the Mississippi State Medical Association for appointment, as required by Mississippi Code Annotated section 41-3-1 (1972), and further that no one of them was confirmed by the Mississippi State Senate as specifically required by section 41-3-1.
This cause was stayed, pending a decision of the United States District Court for the Southern District of Mississippi, on complaint filed in that court on March 14, 1977, by Doctors Clark, Mason and Middleton, *1048 and others, against the Mississippi State Medical Association. In May, 1978, an order was entered in that Court dismissing the suit filed by Doctor Clark, et al. The United States Court of Appeals for the Fifth Circuit on December 7, 1978, affirmed in part and reversed in part the decision of the District Court but retained jurisdiction, pending a decision by the Circuit Court of the First Judicial District of Hinds County of the constitutionality, under state law, of section 41-3-1.
Honorable Rufus Creekmore of the Jackson, Mississippi bar was appointed as special judge to hear and decide this quo warranto proceeding.
Judge Creekmore heard and considered this cause on the Amended Information in the Nature of Quo Warranto, the Amended Answer and Defenses of the Defendants, Relators' Response to Affirmative Matters, and the Joint Stipulation filed by the parties in this cause, and rendered his decision on February 21, 1979, finding: that Section 41-3-1 was constitutional; that Doctors Howard D. Clark, William A. Middleton, and Gilbert R. Mason were not nominated by the Mississippi State Medical Association nor were their appointments by the Governor "confirmed by the Senate" as required by statute; that, therefore, they should be removed from office, and that Doctors S. Lamar Bailey and G. Lamar Arrington continue to hold and exercise the functions of the public office of members of the Mississippi State Board of Health from the fourth and fifth public health districts of Mississippi, respectively, until there are valid and legal successors appointed to these offices. The public office of a member of the Mississippi State Board of Health from the sixth public health district of Mississippi was declared vacant because of the death of Dr. Joseph B. McKinnon.
Defendants appeal from the judgment of the Circuit Court.
Judge Creekmore rendered the following excellent opinion, which is adopted as the opinion of this Court:
On the morning of January 16, 1979, the motion of defendants to dismiss came on to be heard before this court. All parties were in agreement that, on this hearing, the only issues to be considered were whether the challenged statute, on its face, is unconstitutional under state law, because:
(a) It is unconstitutionally vague and indefinite.
(b) It is an unconstitutional infringement upon the Governor's exclusive constitutional right of appointment (this ground was not alleged in the motion, but was briefed and argued).
(c) It constitutes an unlawful delegation of legislative power to a private non-profit corporation.
In approaching a consideration of these important questions, it may be well to mention certain fundamental principles, well settled by numerous decisions of our Supreme Court, which should guide the judiciary in construing and interpreting statutes, especially when their constitutionality is questioned. The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein. Where the statute is plain and unambiguous there is no room for construction, but where it is ambiguous the court, in determining the legislative intent, may look not only to the language used but also to its historical background, its subject matter, and the purposes and objects to be accomplished. Finally all presumptions and intendments must be indulged in favor of the validity of a statute, and its unconstitutionality must appear beyond a reasonable doubt before it will be declared invalid.
The statute under attack is Section 41-3-1 of the Mississippi Code of 1972. That part which is here involved reads as follows:
"The state board of health shall consist of twelve [12] members. Eleven [11] of said members are to be appointed as herein provided; the twelfth member, to be known as the executive officer, is to be elected by the eleven [11] appointive members as provided in section 41-3-5. Eight [8] of the appointive members shall be regular qualified physicians of the *1049 state and members of the state medical association. They shall be nominated to the governor by the state medical association, three [3] from each congressional district in the state, from which number the governor shall appoint one [1] from each congressional district. Said appointments are to be confirmed by the senate."
This section of the Code is a part of Chapter 3, Title 41, which is a comprehensive statute creating the State Board of Health, local health boards and offices, and setting forth their powers and duties. Except for minor changes, it has been an integral part of the Code since 1892. In 1914, our Supreme Court held that the statute creating these administrative agencies and endowing them with power to adopt ordinances, rules and regulations necessary to attain its objects and purposes was not a delegation of legislative power in violation of Section 33 of the State Constitution. Hawkins v. Hoye, 108 Miss. 282, 66 So. 741 (1914).

(a)
Section 41-1-1 of Mississippi Code of 1972 reads as follows:
"The Mississippi State Medical Association, and all other state, district, and county medical societies and associations of the state in affiliation with the purposes of its organization, are hereby constituted the `Mississippi Department of Public Health.' Any licensed practitioner of medicine in the State of Mississippi may, on application, have his name enrolled as a member of said department."
Defendants say that this statute has the effect of causing the words "state medical association" as used in Section 41-3-1 to be so vague, uncertain and indefinite as to deny to them due process of law as guaranteed by Section 14 of our Constitution, because when these statutes are read together it is left uncertain as to whether they might possibly be considered members of the "state medical association" and so entitled to be nominated by that body and appointed by the governor. It is my opinion that these words of the statute, on their face, are not ambiguous, and need no construction; therefore that this ground of objection is not well taken and should be overruled.

(b)
To support their claim that the statute unconstitutionally infringes upon the executive powers of the governor, the defendants refer to certain provisions of the Mississippi Constitution and certain statutes dealing with the powers of the Governor; and they cite three cases from other jurisdictions: McCarley v. Orr, 247 Ark. 109, 445 S.W.2d 65 (1969); Hetherington v. McHale, 458 Pa. 479, 329 A.2d 250 (1974); and Westlake v. Merritt, 85 Fla. 28, 95 So. 662 (1923).
None of these cases are in point: McCarley turned upon a construction of the statute involved; the quotation from Hetherington is dictum taken from the opinion of a concurring judge; and in Westlake, the Florida Constitution expressly conferred upon the Governor the general power of appointing all non-elective officers.
38 Am.Jur.2d, Governor, § 5, says:
"The power to make appointments to public office does not necessarily and inherently belong to the governor. It must be derived from the constitution or statutes; otherwise, he may not possess it. More specifically, appointing power exists only in so far as it has been expressly conferred by the constitution and laws of the state... ." 38 Am.Jur.2d at 935.
Section 116 of our Constitution provides that "The chief executive power of this state shall be vested in a governor . .", and Section 123 provides that: "The governor shall see that the laws are faithfully executed." Neither of these sections expressly confers on the governor the broad appointive powers which are now claimed for him. Nor can a grant of such powers be implied therefrom. Colbert v. State, 86 Miss. 769, 39 So. 65 (1905); Henry v. State, 87 Miss. 1, 39 So. 856 (1905).

.....
Section 103 of our Constitution provides that:

*1050 "In all cases, not otherwise provided for in this constitution, the legislature may determine the mode of filling all vacancies, in all offices, and in cases of emergency provisional appointments may be made by the governor, to continue until the vacancy is regularly filled; and the legislature shall provide suitable compensation for all officers, and shall define their respective powers."
The only general power of appointment vested in the governor is that conferred upon him by legislative enactment, pursuant to the above quoted Section 103 of the Constitution. Thus Code Section 7-1-5(f) gives the governor the power to "make appointments and fill vacancies as prescribed by law", and Section 7-1-35 prescribes the details of making such appointments, all of which shall be "with the advice and consent of the senate."
It is my opinion that the power here questioned is, by our Constitution, vested in the legislative department of government, and so the questioned statute does not encroach upon the governor's constitutional powers.

(c)
Does the questioned statute constitute an unlawful delegation of power to a private, non-profit corporation? There appear to be no Mississippi cases on this precise point, although we do have many cases construing statutes whereby administrative agencies are created and broad powers conferred upon them, all designed to promote their efficient and effective operation.
The broad general rule governing the validity, vel non, of such statutes is whether they prescribe reasonably adequate standards for the agency's guidance. Thus in State ex rel. Attorney General v. Land, 231 Miss. 529, 95 So.2d 764, 96 So.2d 828 (1957), Justice Ethridge said:
"It has been said, `This Court is committed to a liberal rule governing the delegation of legislative functions.' Abbott v. State, 106 Miss. 340, 63 So. 667, 669 (1913). Although the Legislature cannot delegate its power to make a law, it can delegate to an administrative agency the power to determine some fact or state of things upon which the law makes or intends to make its application depend. The essential is that the statute delegating the power must reasonably define the area in which the administrative agency operates and the limitations upon its powers." 231 Miss. at 561-62, 95 So.2d at 777.
Whether this same rule of a "reasonably adequate standard" should govern in the instant case is persuasive, but not necessarily controlling.
On the precise issue before the Court, counsel for both sides have, with diligence and ability, presented and argued cases from other jurisdictions. They are in hopeless conflict. Apparently the majority, in number, adopt the view that such statutes are not invalid as unlawful delegations of legislative power, nor violative of other Constitutional restrictions. Thus, in 67 C.J.S. Officers § 36, it is said:
"Subject to constitutional limitations, the legislature may determine who shall exercise the power of appointment as to particular offices. So, it has been held that the legislature may confer a power of nomination and appointment on nongovernmental persons and bodies, such as private corporations chartered by authority of the state government, voluntary associations of individuals, or an individual not a public officer, if there is a substantial and rational relation between the nongovernmental person, body, or organization intrusted with the power of appointment, nomination, or election, and the function of government which the persons appointed or elected are to perform. ..." 67 C.J.S. at 300-301. (Emphasis added).
In 63 Am.Jur.2d, Public Officers and Employees, § 93, it is said:
"Under a constitutional provision to the effect that all officers whose appointment is not otherwise provided for therein shall be chosen in such manner as is prescribed by law, the legislature may itself make appointments, or may designate *1051 another person, body, or functionary to make such appointments. Thus it may confer the power to make appointments or particular appointments upon the governor or other officers... .
"Where the legislature creates an office, it may, when not restricted by the constitution, confer the power of appointment thereto upon public officers or boards, as, for example, upon a judicial officer or upon associations, corporations, or persons. This does not constitute an illegal delegation of legislative powers, ..." 63 Am.Jur.2d at 687-88.
And in 63 Am.Jur.2d, Public Officers and Employees, § 94, it is said:
"Several, but not all, courts hold that statutes giving the power to appoint or to nominate public officers to private persons or organizations does not violate the constitutional division of the powers of government. It has also been held that such a statute does not unconstitutionally confer a special privilege upon such persons or organizations, violate the equal protection clause, or offend a constitutional provision prohibiting the creation of private corporations by special act. Other courts determine the validity of legislation granting to private organizations the power to appoint to public office on the basis of whether or not there is a rational and substantial relationship between the organizations and the laws to be administered. . .." 63 Am.Jur.2d at 688-89. (Emphasis added).
An elaborate annotation on the subject, wherein the cases both pro and con are analyzed and discussed will be found in 97 A.L.R.2d, page 361.
It is my opinion that the statutory requirement for appointing members to be "regular qualified physicians of the state and members of the state medical association" is a reasonably adequate standard; also that there is a rational and substantial relationship between the state medical association and the State Board of Health; therefore, the statute does not unlawfully delegate legislative power; and so this ground of objection is not well taken and should be overruled.
And finally it should be noted: The legislature, by this statute (§ 41-3-1), delegates to the state medical association the power of nomination; it delegates to the governor the power of appointment; but it reserves unto itself the power of confirmation, without which an appointee cannot legally hold the office. Mississippi Marine Conservation Commission et al. v. Misko, 347 So.2d 355 (Miss. 1977).

* * *
After Judge Creekmore's opinion and Final Judgment of February 21, 1979, was considered by the United States Court of Appeals for the Fifth Circuit, that Court rendered its opinion specifically upholding the constitutionality of Section 41-3-1. Finch v. Mississippi State Medical Ass'n, Inc., 594 F.2d 163 (5th Cir.1979). That Court said:
"A recent Supreme Court opinion, Friedman v. Rogers, 1979, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100, provides important guidance for our examination of the statute [§ 41-3-1]. In Friedman, the Court examined the Texas Optometry Act. The law, inter alia, prescribed the qualifications for membership on the Texas Optometry Board, and required that at least two-thirds of the board be members of a recognized state optometric association. Texas Rev.Civ.Stat.Ann. art. 4552-2.02. The Court unanimously held that this section of the act was constitutional because it was `reasonably related to the State's legitimate purpose of securing a Board that will administer the Act faithfully'. 440 U.S. at 17, 99 S.Ct. at 898, 59 L.Ed.2d at 114." 594 F.2d at 165.
The Fifth Circuit then quoted from Friedman:
"Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." 594 F.2d at 165-66.
The Fifth Circuit then concluded:

*1052 "Subjected to the same test, the Mississippi statute is constitutional on its face. The statute is not drawn upon inherently suspect distinctions and does not trammel fundamental rights. It is rationally related to at least one legitimate purpose, ensuring that the most expert and professionally qualified people will perform the myriad duties required of the Board of Health. We are not permitted to inquire further into the wisdom or desirability of the statutory scheme. See City of New Orleans, supra [City of New Orleans v. Dukes], 427 U.S. [297] at 303, 96 S.Ct. [2513] at 2517, 49 L.Ed.2d [511] at 517." 594 F.2d at 166. (Emphasis added).
For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM and BOWLING, JJ., concur.
LEE and COFER, JJ., take no part.