# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01482-SCT

*32 PIT BULLDOGS AND OTHER PROPERTY AND WILSON DALTON WATKINS*

*v.*

*COUNTY OF PRENTISS AND PRENTISS COUNTY SHERIFF'S DEPARTMENT*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/29/2000 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | TOMMY DEXTER CADLE |
| ATTORNEY FOR APPELLEES: | KENNETH E. FLOYD, II |
| | JOHN A. FERRELL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED- 02/28/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/21/2002 |

### BEFORE SMITH, P.J., WALLER AND COBB, JJ.

### COBB, JUSTICE, FOR THE COURT:

¶1. Wilson Dalton Watkins (Watkins) was arrested in August of 2000 and charged with the crime of "dog fights and related violations of §97-41-19 of the Mississippi Code of 1972." As a result of the arrest, thirty-two of Watkins's pit bulldogs were seized along with other personal property related to the charge.[1] Approximately two weeks later, August 23, 2000, while the criminal trial was pending, a hearing was held in the Prentiss County Circuit Court to determine the disposition of the animals and property seized pursuant to the statute. The judge ordered that eighteen of the thirty-two pit bulldogs be "humanely euthanized because of their physical condition, including their dangerous vicious nature as a result of their prior training and their natural tendency toward violence and dangerous conduct toward other animals and people," citing Miss. Code Ann.§ 97-41-19(3) (2000).[2] Watkins appeals that ruling claiming three similar assignments of error, which have been reduced to one issue for review.

> **DID THE CIRCUIT COURT ERR IN DETERMINING THAT THE VICIOUS AND AGGRESSIVE NATURE OF THESE PIT BULLDOGS WAS A "PHYSICAL CONDITION" WHICH PERMITTED EUTHANIZATION, PURSUANT TO MISS. CODE ANN. § 97-41-19(3)?**

¶2. Concluding that Watkins's assignments of error are not well taken, we affirm.

## FACTS

¶3. Prior to the hearing on this matter, Tommy G. Timmons, President of the Tupelo-Lee County Humane Society, and the Society's Staff Veterinarian, Donald B. Rowan, both certified that eighteen of the thirty-

two dogs should be humanely euthanized due to their physical condition. At the hearing, both Timmons and Rowan testified.

¶4. Timmons testified that the dogs were exceedingly aggressive and could not be housed at the humane shelter for any period of time because they would kill every other animal on site.[3] Timmons's testimony included the history of pit bulldogs, which can be traced back to ancient Rome where they fought in the Circus Maximus as blood-sport dogs. They were later brought to England by the Phoenicians, then subsequently to the United States around the time of the Civil War for blood-sport fighting. The pit bulldog was bred for "gameness," which is the ability of an animal to fight to the death.

¶5. Finally, Timmons testified that these particular eighteen dogs should be euthanized because they had been trained to fight and could not be rehabilitated as pets. He based his conclusion that these dogs had been so trained on the presence of a treadmill that was used to build the dogs' strength, the flick pole that was used to train them to attack, the blood-stained pit where the dogs fought, and the fighting scars and markings on the dogs.

¶6. Rowans similarly testified, based on what he observed, that these dogs were trained to fight. They were very aggressive towards each other and even when they were being loaded they were trying to fight, and had to be separated. Rowans was concerned that if these dogs were released or adopted later, they could present a serious danger, especially to children. Rowan further testified that he too had observed the blood-stained carpets, the arenas used for fighting, and the training tools such as plastic jugs, which pit bulldogs are taught to attack.

¶7. Timmons and Rowan both recommended that the dogs be humanely euthanized. To reach this conclusion, they took into consideration the aggressive nature of the animals, their having been trained to fight, the evidence of fighting, their intent on killing other animals, their being a hazard to humans, and the unlikelihood that they could be rehabilitated as pets. Although Watkins's attorney cross-examined Timmons and Rowan, and offered a brief rebuttal argument, Watkins himself offered no witnesses at the hearing, nor did he testify himself.

## STANDARD OF REVIEW

¶8. This Court's review of a trial court's interpretation of a statute presents a question of law; we review questions of law de novo. *Carrington v. Methodist Med. Ctr., Inc.,* 740 So.2d 827, 829 (Miss. 1999).

## DISCUSSION

¶9. Watkins argues that the statute is plain and unambiguous. He states that it means the dog should be put to sleep if it is suffering from ailments or injuries to the extent that it would be better off dead. He further argues that it is all about what is in the best interest of the dog's well being.

¶10. The same "plain and unambiguous" argument is made by the State, though not surprisingly, its interpretation is totally contrary to Watkins's interpretation. We conclude that both are incorrect; the statute is neither plain nor unambiguous. In fact, it is that ambiguity that is at the heart of this appeal. Concerning statutory interpretation, this Court has said:

> When the language used by the legislature is plain and unambiguous, . . . and where the statute conveys a clear and definite meaning, . . . the Court will have no occasion to resort to the rules of

statutory interpretation. The courts cannot restrict or enlarge the meaning of an unambiguous statute.

. . .

Courts have a duty to give statutes a practical application consistent with their wording, unless such application is inconsistent with the obvious intent of the legislature.

*Marx v. Broom*, 632 So.2d 1315, 1318 (Miss. 1994) (citations omitted). Further, in *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So.2d 1046, (Miss. 1980) we stated:

The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein. Where the statute is plain and unambiguous there is no room for construction, but where it is ambiguous the court, in determining the legislative intent, may look not only to the language used but also to its historical background, its subject matter, and the purposes and objects to be accomplished.

*Clark*, 381 So.2d at 1048. In *Allred v. Webb*, 641 So.2d 1218, 1221 (Miss. 1994), we stated: "Statutes must be read and considered in conjunction with the legislative intent, and then be liberally construed with the object in view of effecting such intent."

¶11. At issue here is the interpretation of the first sentence in the second paragraph of subsection (3) of the criminal dog fighting statute, which reads:

Upon the certification of a licensed veterinarian or officer of the humane society or animal welfare agency that, in his professional judgment, a dog which has been seized is not likely to survive the final disposition of the charges or that, **by reason of the physical condition of the dog, it should be humanely euthanized** before such time, the court may order the dog humanely euthanized....

Miss. Code Ann. § 97-41-19(3) (2000) (emphasis added).

¶12. In its order, the trial court adopted a broad interpretation of the phrase "physical condition" stating:

[I]n reading the statute, the language of that statute says that by reason of physical condition of the dog, it should be humanely euthanized before disposition of the case. I interpret that to mean not only how many scars and injuries it might have but its physical condition with reference to vicious or aggressive behavior, its propensity to fight or to inflict serious injury or death on other animals, including humans. And I think this is a proper interpretation of the statute.

In contrast, Watkins asserts a narrow interpretation. He argues that euthanization is only permissible if the dog is severely injured or impaired.

¶13. In interpreting any part of a statute this Court will first look to the statute as a whole to ensure its meaning is not taken out of context. Subsection (1) of the statute makes it a felony for any person to "sponsor, promote, stage or conduct a fight or fighting match between dogs, or . . . wager or bet, promote or encourage the wagering or betting . . . upon any such fight or . . . own a dog with the intent to wilfully enter it or to participate in any such fight, or . . . train or transport a dog for the purposes of participation in any such fight . . .." Subsection (2) makes it a misdemeanor for any person to be present as a spectator at a dog fight. Subsection (3) gives law enforcement officers the authority to make arrests for violations of

subsection (1) and to take possession of all dogs and paraphernalia, equipment, or other property used in violation of that subsection. Miss. Code Ann. § 97-41-19 (2000).

¶14. Clearly the purpose and objective of this statute is to prosecute individuals who engage in the business of dog fighting, bet on dog fights, or even attend dog fights. The statute makes provisions not only for what constitutes the crime, but for the seizure and disposition of those things utilized in the perpetration of the crime, including the dogs themselves. The Legislature has provided two different scenarios under which a dog seized pursuant to this criminal statute may be humanely euthanized before the final disposition of the criminal case. First, if the dog is not likely to survive until the final disposition of the criminal charges against the owner or violator. Second, if by reason of the physical condition of the dog, the dog should be humanely euthanized. Under Watkins's narrow interpretation, the first clause, (the dog is not likely to survive) would seem to be superfluous, since it would establish essentially the same criteria for euthanization as the second clause. Under Watkins's narrow interpretation, the only reason the dog could be euthanized pursuant to the statute would be because of severe injury or impairment. It would not encompass a situation, such as here, where the dog should be euthanized because it has been trained to fight, cannot be rehabilitated as a pet, and poses a serious threat to other animals and people, especially children.

¶15. We conclude that the circuit court's broader interpretation is in keeping with the obvious legislative intent in enacting the criminal dogfight statute. Considering this Court's directive to liberally construe a statute with the object of effecting legislative intent, *see Allred*, 641 So.2d at 1221, clearly the circuit court's broader interpretation is correct.

## CONCLUSION

¶16. Pursuant to § 97-41-19, if a licensed veterinarian, or officer of the humane society or animal welfare agency certifies that, "in his professional judgment, a dog which has been seized . . . [and] by reason of the physical condition of the dog, it should be humanely euthanized . . . the court may order the dog humanely euthanized." Miss. Code Ann. § 97-41-19(3) (2000). In the case sub judice, both a licensed veterinarian and an officer of a humane society have certified and testified that such is their professional judgment. The trial court acted within its statutory authority, and its judgment is affirmed.

¶17. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., AND EASLEY, J., CONCUR IN RESULT ONLY.**

1. This property included, inter alia, items indicative of dog fighting, such as an automobile tire found suspended from the ceiling of a barn, a section of plastic pipe with a plastic jug attached to one end, a treadmill, 2 sets of weighing scales, various dietary supplements and medications, and 3 wooden "break" sticks.

2. The remaining dogs did not need to be euthanized because they did not appear aggressive; or they were young, not showing any aggression towards people or other animals, and not having had any fight training. Three of the dogs that were seized had died before the hearing.

3. While the dogs were housed at the humane shelter, one of the dogs chewed through a cage to attack another dog resulting in the death of both dogs.