# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-IA-00675-SCT

*THE ESTATE OF STACEY KAY KLAUS BY ALTA KLAUS, ADMINISTRATRIX AND ALTA KLAUS AS PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH BENEFICIARIES OF STACEY KAY KLAUS*

*v.*

*VICKSBURG HEALTHCARE, LLC d/b/a RIVER REGION HEALTH SYSTEMS, RIVER REGION MEDICAL CORPORATION, TRIAD HOSPITALS, INC., STEPHANIE VANDERFORD, R.N., AND EUGENE FERRIS, III, M.D.*

DATE OF JUDGMENT:            04/04/2006
TRIAL JUDGE:                 HON. FRANK G. VOLLOR
COURT FROM WHICH APPEALED:   WARREN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS:     JERRY CAMPBELL
ATTORNEYS FOR APPELLEES:     KRISTOPHER ALAN GRAHAM
                             STUART BRAGG HARMON
                             R.E. PARKER, SR.
                             CLIFFORD C. WHITNEY, III
NATURE OF THE CASE:          CIVIL - WRONGFUL DEATH
DISPOSITION:                 AFFIRMED AND REMANDED - 11/29/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     In this interlocutory appeal, the Court is asked to address the legislatively-instituted cap on non-economic damages found in Mississippi Code Annotated Section 11-1-60(2)(a) (Supp. 2007) and its effect, vel non, on the wrongful-death statute, i.e., Mississippi Code Annotated Section 11-7-13 (Rev. 2004).

# FACTS

¶2. Stacey Kay Klaus ("Stacey") died following surgery at River Region Hospital. On July 18, 2005, Stacey's mother, Alta, filed a medical malpractice complaint against the Appellees in the Circuit Court of Warren County, Mississippi, as Administratrix of Stacey's estate and "as personal representative of the wrongful-death beneficiaries of [Stacey] . . . ." Stacey's wrongful-death beneficiaries ("Klauses") are Alta; her father, Sylvain; and her half-sister, Marian.

¶3. Subsequently, the Klauses filed a "Motion for Declaratory Judgment" in the trial court, stating:

> 2. Under Miss. Code Ann. § 11-1-60, non-economic damages are limited to $500,000.00 for "the plaintiff."
>
> 3. This wrongful death claim actually has three plaintiffs being the mother, father and half-sister. Although by statute each plaintiff must share equally in any award, each plaintiff has a separate claim for damages incurred for the death of [Stacey] because each plaintiff has a different relationship with [her].
>
> 4. The rights of each beneficiary plaintiff is affected by Miss. Code Ann. § 11-1-60. [The Klauses] pursuant to Rule 57 M.R.C.P. seeks a declaration from this Court, deciding *whether each plaintiff's non-economic damages are limited to $500,000.00 or the suit's total non-economic damages are limited to $500,000.00.*

(Emphasis added). Dr. Eugene Ferris filed his Response to that motion,[1] arguing that "the noneconomic damages of all of the wrongful death beneficiaries of [Stacey], in the aggregate, are capped at the statutory maximum of $500,000 under Miss. Code Ann. § 11-1-60." Following hearing, the circuit court entered a "Declaratory Judgment" finding that "the limitation on non-economic damages in 11-1-60(2)(a) to $500,000.00 applies to this cause

---

[1]Subsequently joined by the other Appellees.

of action regardless of the number of beneficiaries." This Court granted the Klauses' timely petition for interlocutory appeal. *See* M.R.A.P. 5.

## ISSUE

¶4. This Court will consider:

(1) Does Mississippi Code Annotated Section 11-1-60(2)(a) limit non-economic damages to $500,000 for all wrongful death beneficiaries and the estate in an action for medical malpractice?

## ANALYSIS

¶5. As this interlocutory appeal involves "a question of law and interpretation of a statute[,] . . . the standard of review is de novo." *Miss. Dep't of Transp. v. Allred*, 928 So. 2d 152, 154 (Miss. 2006) (citing *Cooper v. Crabb*, 587 So. 2d 236, 239 (Miss. 1991)). This Court has stated that:

[i]n considering a statute passed by the legislature, . . . the first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. Whether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent.

*City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992) (citations omitted).

¶6. Mississippi Code Annotated Section 11-1-60(2)(a) provides that:

[i]n any cause of action filed on or after September 1, 2004, for injury based on malpractice or breach of standard of care against a provider of health care, including institutions for the aged or infirm, in the event the trier of fact finds the defendant liable, they shall not award *the plaintiff* more than Five Hundred Thousand Dollars ($500,000.00) for noneconomic damages.

Miss. Code Ann. § 11-1-60(2)(a) (Supp. 2007) (emphasis added). In pertinent part, the wrongful-death statute authorizes that:

3

[t]he action for such damages may be brought in the name of the personal representative of the deceased person . . . for the benefit of all persons entitled under the law to recover, . . . or by the parent for the death of a child, . . . or by a sister for the death of a sister, . . . or all parties interested may join in the suit, and *there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on the merits.* Except as otherwise provided in Section 11-1-69, in such action the party or parties suing shall recover such damages allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.

Miss. Code Ann. § 11-7-13 (Rev. 2004) (emphasis added).

¶7.    The Klauses argue that these two statutes, read together, create an ambiguity. Specifically, they maintain that the "shall not award the plaintiff more than Five Hundred Thousand ($500,000.00) for noneconomic damages" language of Mississippi Code Annotated Section 11-1-60(2)(a) is incongruent with the fact that, under the wrongful-death statute of Mississippi Code Annotated Section 11-7-13, multiple plaintiffs may have standing to file suit. The Appellees respond that "[w]rongful death actions are, inherently, derivative" and, therefore, "any defense which would have been available against the deceased, is available against the wrongful death beneficiaries." *See Lee v. Thompson*, 859 So. 2d 981, 987 (Miss. 2003). Therefore, the Appellees argue that "the plain language of § 11-1-60 establishes that the cap applies to the total amount of recoverable damages and that it is not multiplied by the number of parties involved." Furthermore, the Appellees assert that following this Court's decision in *Allred*, Mississippi Code Annotated Section 11-1-60, "when read *in pari materia* with §§ 1-3-1 and 1-3-33, applies regardless of the number of plaintiffs."

¶8.    In *Allred*, this Court addressed the question of:

when multiple governmental defendants have been sued in "single occurrence" jurisdictions, such as Mississippi, does the limitation of liability [in Mississippi Code Annotated Section 11-46-15(1)(a)[2]] provide for one maximum dollar amount of liability for a single tortious act, regardless of the number of governmental entities sued, or does the maximum dollar amount of liability apply separately to each governmental entity defendant?

*Allred*, 928 So. 2d at 154. In response to Allred's argument that the $50,000 limit in Mississippi Code Annotated Section 11-46-15(1) is to be applied per person, *see id*. at 153, this Court found:

> Miss. Code Ann. Section 1-3-1, states, "this chapter is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required by this chapter." Specifically pertinent in this case is Miss. Code Ann. Section 1-3-33 which states, "*words used in the singular number only, either as descriptive of persons or things, shall extend to and embrace the plural number*; and words used in the plural number shall extend to and embrace the singular number, *except where a contrary intention is manifest*."
>
> The common maxim is that statutes *in pari materia* are to be construed together. When a statute is *in pari materia* with a later one, it is simply part of its context to be considered by the Court in deciding whether the meaning of a provision in the later statute is plain. *See* Rupert Cross, *Statutory Interpretation* 128 (1976). Applying Miss. Code Ann. Section 1-3-33 to an analysis of the Mississippi Tort Claims Act, it is abundantly clear that the Act fails to manifestly express a contrary intention, as required by Miss. Code Ann.

---

[2]Mississippi Code Annotated Section 11-46-15(1)(a) states, in pertinent part, that:

(1) In any claim or suit for damages against *a governmental entity or its employee* brought under the provisions of this chapter, *the liability shall not exceed the following for all claims arising out of a single occurrence for all damages permitted under this chapter*:

(a) For claims or causes of action arising from acts or omissions occurring on or after July 1, 1993, the sum of *Fifty Thousand Dollars ($50,000.00)*.

Miss. Code Ann. § 11-46-15(1)(a) (Rev. 2002) (emphasis added).

Section 1-3-33. *The Legislature had the opportunity to declare that the statute at issue was to be read only in the singular, but did not. Additionally, the Legislature did not manifestly express a contrary intention not to include plural language in its Declaration of Legislative Intent. Miss. Code Ann. § 11-46-3. The Legislature had the opportunity to manifest an intent that the statute should be read only in the singular; however, it is clear the Legislature did not do so. There being no ambiguity, the Court is bound to simply apply the statutes according to their plain meaning.*

*Allred*, 928 So. 2d at 155-56 (emphasis added). Therefore, this Court concluded that Mississippi Code Annotated Section 11-46-15(1) "shall be interpreted by using singular *or* plural language." *Id*. at 156 (emphasis added).

¶9. The learned circuit judge did not have the benefit of *Allred* when he entered "Declaratory Judgment" in favor of the Appellees. Nonetheless, he correctly observed that the Klauses' "argument that the use of the singular form of 'plaintiff' in § 11-1-60 MCA would apply to each beneficiary, individually, is not persuasive . . . ." Just as in *Allred*, "[t]he Legislature had the opportunity to declare that the statute at issue was to be read only in the singular, but did not. Additionally, the Legislature did not manifestly express a contrary intention not to include plural language in its Declaration of Legislative Intent." *Id*. Accordingly, the statute is to be applied according to its plain meaning and "the plaintiff" in Mississippi Code Annotated Section 11-1-60(2)(a) "shall be interpreted by using the singular or plural language" when considered *in pari materia* with Mississippi Code Annotated Section 1-3-33 (Rev. 2005).

¶10. While acknowledging the rectitude of the majority view, stating it "is consistent with the legislative purpose behind Section 11-1-60" (Dissenting Opinion at ¶21), the dissent then mulls over the potential unintended consequences of the legislative act and concludes that

6

these potential unjust results were "not fully taken into consideration by the Legislature." (Dissenting Opinion at ¶23). If perchance the Legislature should subscribe to these assumptions, it may amend Mississippi Code Annotated Section 11-1-60 and expressly manifest a contrary intention to the plain language of Mississippi Code Annotated Section 1-3-33. *See Miss. Ethics Comm'n v. Grisham*, 957 So. 2d 997, 1003 (Miss. 2007) ("[t]he power to change this result lies with the legislature to amend the statute."). However, the dissent's suggestion that this Court should redress the perceived legislative error by judicial fiat requires an act of judicial activism. To properly preserve the separation of powers mandated by the Mississippi Constitution, *see* Miss. Const. art. I, §§ 1-2, this Court should act with restraint. *See Grisham*, 957 So. 2d at 1003 ("[t]he privilege to amend a statute, not constitutionally infirm, does not rest with this Court.").

## CONCLUSION

¶11.     By enacting Mississippi Code Annotated Section 11-1-60(2)(a), the Legislature expressly instituted a cap on noneconomic damages recoverable by "the plaintiff." Mississippi Code Annotated Section 1-3-33 provides that words written in the singular are to be read in the plural. In light of Mississippi Code Annotated Section 1-3-33 and this Court's decision in *Allred*, the cap on noneconomic damages applies to plaintiff or plaintiffs. Therefore, the cap on noneconomic damages in Mississippi Code Annotated Section 11-1-60(2)(a) applies to all plaintiffs who bring a wrongful-death action pursuant to Mississippi Code Annotated Section 11-7-13. Accordingly, the judgment of the Circuit Court of Warren County is affirmed, and this case is remanded to that court for further proceedings consistent with this opinion.

¶12.  **AFFIRMED AND REMANDED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON, AND LAMAR, JJ., CONCUR.  DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.**

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶13.  "In considering a statute passed by the legislature . . . the first question a court should decide is whether the statute is ambiguous." ***City of Natchez, Miss. v. Sullivan***, 612 So. 2d 1087, 1089 (Miss. 1992).  Section 11-1-60(2)(a) provides in pertinent part: "In a cause of action filed on or after September 1, 2004, . . . the trier of fact . . . shall not award *the plaintiff* more than Five Hundred Thousand Dollars ($500,000) in noneconomic damages."  Miss. Code Ann. § 11-1-60(2)(a) (Supp. 2007) (emphasis added).  When read alone, this provision is unambiguous: It caps the amount of noneconomic damages a plaintiff can recover in a medical malpractice action at $500,000.  However, Section 11-1-60(2)(a) becomes ambiguous when considered in the context of a wrongful death action, where one action is frequently filed by multiple plaintiffs.[3]

¶14.  The majority finds the provision at issue unambiguous and contends that it "is to be applied according to its plain meaning[.]" According to the majority, the plain meaning of Section 11-1-60(2)(a) is that the noneconomic damages cap set forth in that provision applies to all wrongful death beneficiaries in the aggregate, rather than to each beneficiary

---

[3]Under the wrongful death statute, only one wrongful death action may be brought on behalf of all the wrongful death beneficiaries: "[T]here shall be but one (1) suit..."  Miss. Code Ann. § 11-7-13 (Rev. 2004).  But a wrongful death action may be brought "by all interested parties," and "all parties interested may join the suit[.]" *Id.*

8

individually. The majority reaches this conclusion by reading the term "plaintiff" in its plural form ("plaintiffs") in accordance with Mississippi Code Annotated Section 1-3-33 (Rev. 2005).

¶15. I agree that the term "plaintiff" Section 11-1-60(2)(a) must be read in both its singular and plural form because the Legislature did not express an intent that the statute be read only in the singular. Miss. Code Ann. § 1-3-33 (Rev. 2005). However, even if one reads the term "plaintiff" in its plural form, the plain meaning of Section 11-1-60(2)(a) is not that the noneconomic damages cap applies to all wrongful death beneficiaries in the aggregate. When "plaintiffs" is substituted for "plaintiff," the statute remains ambiguous: "the trier of fact . . . shall not award the plaintiff[s] more than Five Hundred Thousand Dollars ($500,000) for noneconomic damages." Miss. Code Ann. § 11-1-60(2)(a) (Rev. 2005). When read in that form, the statute can be interpreted to mean either that plaintiffs cannot recover more than a total of $500,000 in noneconomic damages in a wrongful death action or that each plaintiff in a wrongful death action cannot recover more than $500,000 in noneconomic damages.

¶16. "Where statutes are ambiguous or in conflict with one another, it is proper to resort to the rules of statutory construction." *Miss. Gaming Comm'n v. Imperial Palace of Miss., Inc.*, 751 So. 2d 1025, 1028 (Miss. 1999). "The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein." *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980).

¶17. The intent of the Legislature in enacting Section 11-1-60 is explicitly stated in the statute: "It is the intent of this section to limit all noneconomic damages to the above." Miss.

9

Code Ann. § 11-1-60 (Supp. 2007). Based on a plain reading of the statute, it is clear that the Legislature intended to cap the amount of noneconomic damages that could be recovered by a single plaintiff in a single medical malpractice cause of action. However, it is not apparent that the Legislature intended to cap the total amount of noneconomic damages that could be recovered by multiple plaintiffs in a wrongful death action premised on medical malpractice at $500,000.

¶18. When the Legislature has intended to place a cap on plaintiffs' damages in the aggregate in other contexts, it has done so explicitly. For example, in Mississippi Code Annotated Section 11-46-15(1) (Rev. 2002), a provision of the Mississippi Tort Claims Act, the Legislature "establish[ed] a per occurrence cap on governmental liability." *Allred v. Yarborough*, 843 So. 2d 727, 730 (Miss. 2003). Section 11-46-15(1) provides in pertinent part: "In any claim or suit for damages against a governmental entity or its employee brought under the provisions of this chapter, the liability shall not exceed the following for *all claims* arising out of a single occurrence for all damages permitted under this chapter . . . ." Miss. Code Ann. § 11-46-15(1) (Rev. 2002) (emphasis added).

¶19. It is well-settled that "the omission of language from a similar provision on a similar subject indicates that the legislature had a different intent in enacting the provisions, which it manifested by the omission of the language." *City of Natchez*, 612 So. 2d at 1089. The fact that Section 11-1-60(2)(a) does not contain language similar to that of Section 11-46-15(1), limiting damages for all claims arising out of a single occurrence or incident, indicates that the Legislature did not intend for the $500,000 noneconomic damages cap to apply to all claims arising out of a single act of medical malpractice.

10

¶20.   "[I]n determining the legislative intent, [the Court] may look not only to the language used [in the statute] but also to [the statute's] historical background, its subject matter, and the purposes and objects to be accomplished." **Clark**, 381 So. 2d at 1048.  Section 11-1-60 was passed in the special session of the Mississippi Legislature on tort reform in 2002.  E. Farish Percy, *Checking Up on the Medical Malpractice Liability Insurance Crisis in Mississippi: Are Additional Reforms the Cure?*, 73 Miss. L.J. 1001, 1002 (2004).  The ultimate purpose of Section 11-1-60 was to alleviate the perceived medical malpractice liability insurance crisis in Mississippi. *See id.* at 1001-1003, 1034-37.  Specifically, Section 11-1-60 was designed to put an end to excessive damage awards in medical malpractice cases,[4] which, in turn, would help bring down the cost of medical malpractice insurance in the state. *See id.* at 1036 n.126.

¶21.   Although the majority's holding that Section 11-1-60(2)(a) limits noneconomic damages per medical malpractice incident in the aggregate is consistent with the legislative purpose behind Section 11-1-60, I believe the holding will have ramifications that the Legislature did not intend.[5]  "Unthought of results must be avoided if possible, especially

[4]In fact, not many large medical malpractice verdicts were returned in the period preceding the movement for tort reform.  One study found that the number of medical malpractice verdicts exceeding one million dollars averaged one per year from 1995 through mid-2002.  Neil Vidmar and Leigh Anne Brown, *Tort Reform and the Medical Liability Insurance Crisis in Mississippi: Diagnosing the Disease and Prescribing a Remedy*, 22 Miss. C. L. Rev. 9, 15-20 (2002) (concluding that "there is no evidence that Mississippi juries are out of control in medical malpractice cases").

[5]By stating that today's holding is consistent with the legislative purpose behind Section 11-1-60, I do not mean that the majority's application of Section 11-1-60(2)(a) is correct in any regard.  I am not "validating" the majority's "analysis" at all.  I am simply stating the obvious: Applying Section 11-1-60(2)(a) per medical malpractice incident in the aggregate, as the majority does, is consistent with the statute's legislative purpose of limiting

if injustice follows, and unwise purpose will not be imputed to the Legislature when a reasonable construction is possible." ***McMullen v. State ex rel. Alexander***, 217 Miss. 256, 271, 63 So. 2d 856, 861 (1953) (internal quotation marks and citation omitted). Many "unthought of [and unjust] results" will flow from today's holding.[6]

¶22. First, wrongful death beneficiaries who are members of smaller classes of beneficiaries will receive more damages for their claims for loss of society and companionship than beneficiaries who belong to larger classes. Second, in wrongful death cases where the jury determines that the decedent's pain and suffering between injury and death and the wrongful death beneficiaries' claims for loss of society and companionship warrant an award of damages in excess of $500,000, the beneficiaries will not be fully compensated for the decedent's pain and suffering or their loss of society and companionship.[7] Third, today's holding will affect medical malpractice cases not involving wrongful death. A married couple that brings a medical malpractice action consisting of a

---

the amount of noneconomic damages awarded in medical malpractice cases because it will limit the amount of noneconomic damages awarded in medical malpractice cases. Of course, the construction of the statute that I advocate is also consistent with the legislative purpose behind the statute. The ultimate question is not whether a particular application of Section 11-1-60(2)(a) is consistent with the general purpose of the statute, but whether it effectuates the intent of the Legislature. In my view, the majority's application of Section 11-1-60(2)(a) in this case does not effectuate the intent of the Legislature. Accordingly, I do not acknowledge the "rectitude" of the holding in this case.

[6]As discussed infra, there is nothing "potential" about the unjust results of today's decision, contrary to the majority's assertion.

[7]As a result of the holding in today's case, in wrongful death cases not premised on medical malpractice, the beneficiaries will not be fully compensated if a jury determines that the noneconomic damages exceed $1,000,000. Miss. Code Ann. § 11-1-60(2)(b) (Supp. 2007).

personal-injury claim and a claim for loss of consortium will not be fully compensated if the jury determines that the injured spouse's damages for pain and suffering and the other spouse's damages for loss of consortium exceed $500,000.[8]

¶23. I do not believe the Legislature intended for the noneconomic damages cap set forth in Section 11-1-60(2)(a) to produce such unjust results. This Court has noted that the Legislature did not contemplate the impact that the tort reform measures it enacted would have on the wrongful death statute: "The Legislature clearly made major reforms in various statutes during recent sessions which included passing Mississippi Code Ann. Section 11-11-3(3). However, it is equally clear that the wrongful death statute, Section 11-7-13, was not considered concerning events and multiple defendant doctors such as what we have before us now, when these changes in various statutes where made." *Rose v. Bologna*, 942 So. 2d 1287, 1290 (¶9) (Miss. 2006). Clearly, the impact that Section 11-1-60 could potentially have on the wrongful death statute was not fully taken into consideration by the Legislature.

¶24. "The purposes of the wrongful death statute are to prevent the wrongful termination of life and provide the beneficiary with compensation for the loss of companionship and society of the deceased, the pain and suffering of the deceased between injury and death, and punitive damages." *66 Fed. Credit Union v. Tucker*, 853 So. 2d 104, 109-10 (Miss. 2003); *see also* Miss. Code Ann. § 11-7-13 (Rev. 2004) ("the party or parties suing shall recover

---

[8]This will be the effect because in a medical malpractice case involving a primary personal-injury claim and a loss-of-consortium claim, there is one cause of action and more than one plaintiff, as in a wrongful death action. *See Choctaw, Inc. v. Wichner*, 521 So. 2d 878, 881 (Miss. 1988) (holding that a claim for loss of consortium is a derivative claim, not an independent cause of action).

such damages allowable by law as the jury may determine to be just, taking into consideration *all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit*") (emphasis added).  To hold that the Legislature intended for the noneconomic damages cap on medical malpractice actions to apply to wrongful death beneficiaries in the aggregate, would mean that the Legislature enacted Section 11-1-60 in direct contravention of one of the purposes of the wrongful death statute: to fully compensate all beneficiaries for their loss of society and companionship and the pain and suffering of the decedent.  This Court should not impute such an unwise purpose to the Legislature, especially when a reasonable construction of the statute that does not produce unjust results is possible.  *McMullen*, 63 So. 2d at 861.

¶25.   Construing Section 11-1-60(2)(a) to apply to each wrongful death beneficiary separately, rather than in the aggregate, prevents that provision from abrogating an essential part of the wrongful death statute.  Further, such a construction gives effect to the Legislature's intent in enacting Section 11-1-60–limiting the amount of noneconomic damages awarded in medical malpractice cases–because each beneficiary will not be allowed to recover more than $500,000 in noneconomic damages.  This approach does not subvert the cap created by the Legislature.  Rather, it balances the Legislature's goal of protecting the health care industry with the mandate of the wrongful death statute that all wrongful death beneficiaries be fully compensated for their claims.  Accordingly, I would hold that the

14

noneconomic damages cap set forth in Section 11-1-60(2)(a) applies to each wrongful death beneficiary individually.[9]

¶26.    The Supreme Court of Florida reached the same conclusion when faced with a very similar issue. ***St. Mary's Hosp., Inc. v. Phillipe***, 769 So. 2d 961, 967-71 (Fla. 2000).  In that case the court was presented with the question of whether the $250,000 noneconomic damages cap in the arbitration provisions of Florida's Malpractice Act applied to all wrongful death claimants  in the aggregate or to each claimant individually.  ***Id.*** at 967.  The provision in question reads as follows:

> Noneconomic damages shall be limited to a maximum of $250,000 *per incident,* and shall be calculated on a percentage basis with respect to capacity to enjoy life, so that a finding that the *claimant's* injuries resulted in a 50-percent reduction in *his or her* capacity to enjoy life would warrant an award of not more than $125,000 noneconomic damages.

Fla. Stat. § 766.207(7)(b) (emphasis added).

¶27.    The court acknowledged that the provision stated that "noneconomic damages shall be limited to a maximum of $ 250,000 *per incident*," but concluded that the use of the singular "claimant" made the provision ambiguous.  ***Phillipe***, 769 So. 2d at 968.  Because the statute was ambiguous, the court proceeded to "look to the legislative intent for guidance."  ***Id.***  It determined that the noneconomic damages cap provided "liability insurers

---

[9]The majority claims that my proposed construction of Section 11-1-60(2)(a) is intended to "correct [a] perceived legislative error by judicial fiat," and would constitute an "act of judicial activism."  The majority is mistaken.  I am not attempting to correct a legislative error; rather, I am seeking to discover the intent of the Legislature in enacting Section 11-1-60(2)(a) and apply it accordingly.  After construing the statute, unlike the majority, I find that the Legislature did not intend for Section 11-1-60(2)(a) to cap the total amount of noneconomic damages that can be recovered in a wrongful death action at $500,000.  Accordingly, my conclusion is the opposite of judicial activism.

with the ability to improve the predictability of the outcome of claims for the purpose of loss planning in risk assessment for premium purposes." *Id.* at 970.

¶28.   After discerning the legislative intent, the court "conclude[d] that the cap on noneconomic damages applies to each claimant individually." *Id.* at 972.   The court explained its reasoning as follows: "[I]n order for the assessment of a survivor's noneconomic damages to be equitable, each survivor's loss must be independently determined.  Moreover, the loss of a survivor [should] not [be] diminished by the mere fact that there are multiple survivors." *Id.* at 971.  The court also determined that its holding was consistent with the purpose of the arbitration provision:

> Such an interpretation would provide increased predictability in the outcome of the claims as the insurers would no longer be contending with the possibility of exorbitant noneconomic damage awards but would have a fixed dollar amount ($ 250,000), which each claimant's award could not exceed. Moreover, this interpretation does more to promote early resolution of medical negligence claims, as it provides an equitable result which will in turn further encourage claimants to seek resolution through arbitration.

*Id.* at 970.  In addition, the court acknowledged that "were we to interpret the noneconomic damages cap to apply to all claimants in the aggregate, we conclude that such an interpretation would create equal protection concerns." *Id.* at 971.

¶29.   I find the Supreme Court of Florida's analysis and reasoning to be very persuasive. I agree that each wrongful death beneficiary's noneconomic damages must be determined separately in order to be equitable and that the recovery of a beneficiary should not be reduced by the existence of other beneficiaries.  Like the Florida Supreme Court, I conclude that applying the noneconomic damages cap per beneficiary is consistent with the legislative

16

goal of limiting health care providers' exposure to liability. I also believe that the holding

in today's case creates equal protection concerns.[10]

¶30.    For these reasons, I would hold that the noneconomic damages cap of Section 11-1-60(2)(a) applies to each wrongful death beneficiary individually, reverse the judgment of the circuit court and remand this case for further proceedings consistent with that holding. Accordingly, I must respectfully dissent.

**GRAVES, J., JOINS THIS OPINION.**

---

[10]I not only have equal protection concerns about the application of the noneconomic damages cap on medical malpractice actions to wrongful death cases, but I also have equal protection concerns about the cap itself. Several courts have held that such a cap violates their state's equal protection clause. The Alabama Supreme Court held that placing a cap on noneconomic damages in medical malpractice cases "creates a favored class of tort-feasors, based solely upon their connection with health care[.]" *Moore v. Mobile Infirmary Ass'n*, 592 So. 2d 156, 166-67 (Ala. 1991); *see also Carson v. Maurer*, 424 A.2d 825, 940-41 (N.H. 1980), *overruled on other grounds by Cmty. Res. for Justice, Inc. v. City of Manchester*, 917 A.2d 707, 721 (N.H. 2007). Because this issue was not raised on appeal, I will not address it.